CARL L. MORRISON, Plaintiff, *v.* HAROLD PHILLIPS, Defendant.

Supreme Court, Onondaga County, April 20, 1933.

*Mellor, George & Wood*, for the plaintiff.

*Searl & McElroy*, for the defendant.

SMITH, E. N., J. The plaintiff is a milk dealer who owns and operates milk routes; he had purchased and paid a valuable consideration for a milk business and the milk routes in connection therewith; the defendant was an employee of those from whom the plaintiff purchased his milk business, acting as a driver and deliverer of milk; after the purchase of these milk routes by the plaintiff the defendant continued as an employee of the plaintiff for some period of time; he was paid his wages; there was no written contract between them; later the defendant quit his employment with the plaintiff and became a milk dealer himself; in the development of the defendant's own milk route, upon his list of customers are ninety-two names of former customers of the plaintiff; of these, forty-four took milk from the defendant without and forty-eight as a result of his personal solicitation; at the time of the trial of the action the defendant was delivering milk to twenty-three of the former

customers of the plaintiff. The action is for an injunction restraining the defendant from soliciting, serving or in any way communicating in a business way with any of the trade or customers of the plaintiff, and for damages.

Can the action be maintained? It is a matter of common knowledge that a well-established milk route, built up after years of patient effort, where customers have become accustomed to the practices and to the efficiency of the dealer and have approved the quality of the milk delivered, has an actual value by way of good will and is the subject of sale for valuable consideration. Milk dealers having well-established milk routes of sufficient size have been engaged in a profitable business, and, for reasons not here necessary to state, have made their profits because they have, on the one hand, been able to purchase their milk from the producers thereof at a price so low as to yield no profit to the producer, while on the other hand they have been able to sell the milk to the consumer at a price which yielded an inordinate profit to themselves.

An uneconomic practice which had developed is the multiplicity and duplication of milk routes, by reason of which many milk delivery wagons travel the same routes, many of them with customers so widely distributed that such a dealer has been unable to operate at a profit, even with the relatively high price charged to the consumer. The competition among dealers for customers has been so destructive as to have become a cause of the impairment or depression of the whole dairy industry of the State. The farmer has no control over the dealer, but suffers from his misconduct. Such practices have been ruinous not only to the farmer but also in some instances to the dealers themselves. This matter of unfair practices and conduct on the part of dealers is now the subject of State regulation. There is no question but what, on grounds of public health and because an abundant supply of pure, wholesome milk at reasonable prices is essential to the life and health of the people, the milk industry as a whole is affected with a public interest; so that legislation to secure an adequate supply of pure and wholesome milk may be available to the people of this State at reasonable prices, to the extent at least that it is based upon considerations of public health on the one hand and lawful restraint of unfair practices on the other, will be sustained by the courts.

There is no doubt but what the effect of recent legislation which sets up in the Department of Agriculture and Markets a Milk Control Board and provides for the licensing of milk dealers will, in its proper operation, go far to eliminate the abuses of which the

plaintiff in this action complains; but this legislation affords no basis for the remedy which the plaintiff herein seeks.

There is nothing about the plaintiff's milk routes which in any wise differentiates them from the milk routes of others. There is nothing about the milk dealer's business which has in it any element of trade secrets. If the defendant is now in competition with the plaintiff, that competition is no different from the competition of any other dealer, excepting the personal touch which the defendant may have acquired with customers by reason of his employment by the plaintiff. He was actually employed by the plaintiff for a comparatively short period of time, and his knowledge of the customers of the plaintiff was possessed by him largely before he came into the employ of the plaintiff, by reason of the fact that he had been in the employ of the plaintiff's predecessor. If he has peculiar powers of acquiring the friendship of customers, an attractive personality, creates a feeling of trust and confidence in customers, these are qualities which are peculiarly his own; so long as he remained in the employ of the plaintiff the plaintiff had the benefit of these qualities; but when he ceased to be in the employ of the plaintiff he did not lose these qualities which were personal to himself, nor did the plaintiff acquire any property right in them. Of course there are instances where a person, as a great artist, actor, or musician, is employed at large compensation by reason of his extraordinary abilities; contracts in reference to such persons are protected by the courts, but always because of the fact that there is a contractual relationship to be impaired. There is nothing about the business of distributing milk, in respect of good will, which differentiates it from a grocery store, and while as to these trade secrets are protected, and peculiar methods have in instances been made secure from an invasion in order to maintain fair trade practices, the mere fact that he has customers does not protect a groceryman from the effort of a former employee entering into the grocery business to solicit his trade. The plaintiff in the instant case, if he had desired to protect himself against the wrongs of which he now complains, had only to make a written contract of employment which within reasonable limits would have protected him from solicitation of customers by the defendant after his employment had ceased.

While there has been, in the cases called to my attention dealing with situations like this, language used which indicates that in the absence of a contract injunctive relief of the character now sought by this plaintiff may be granted, these expressions in every instance are *obiter dicta*, and in every case there was in actuality a contract, the provisions of which the plaintiff was seeking to enforce by way

of injunctive relief. While one may reason that the defendant ought not to have done what he did, it cannot be said that he has committed a legal wrong because he has endeavored to set up a business for himself. If the circumstances of this case could be held to warrant the relief sought by the plaintiff, it would open a field for injunctive relief through which the courts would be called upon to regulate mere conduct in practically all the avenues of trade.

The plaintiff, having failed to protect himself by contract against the acts of the defendant which are complained of, and having failed to establish a case within the classifications where, in the absence of contracts, injunctive relief has in rare instances been resorted to, is not entitled to the relief prayed for in the complaint, and the complaint should be dismissed, with costs to the defendant.

Judgment accordingly.