DUANE JONES COMPANY, INC., Respondent, *v.* FRANK G. BURKE, JR., et al., Appellants, et al., Defendants.

First Department, May 9, 1953.

*Neil P. Cullom* of counsel (*Stanford Schewel* with him on the brief; *Neil P. Cullom,* attorney), for appellants.

*Milton Pollack* of counsel (*Thomas F. Boyle, James P. Reeves* and *Samuel N. Greenspoon* with him on the brief; *Boyle & Reeves,* attorneys), for respondent.

VAN VOORHIS, J. The basic facts giving rise to this litigation have been set forth in the opinion of Mr. Justice DORE. A cause of action was sustained, as it seems to me, against the individual defendants who are financially interested in the newly organized corporation known as Scheideler, Beck and Werner, Inc., and against said corporate defendant, which promptly emerged with at least 50% of plaintiff's annual business and 90% of its skilled employees. All of the individual defendants-appellants became stockholders of the new corporation, except defendants Frank G. Burke, Jr., and Robert Hayes. The latter two defendants derived no profit from the new corporation, and as against them the complaint should be dismissed. Plaintiff's charges of conspiracy, in my judgment, were not established, except as limited to those who participated in and benefited from the new corporation, but enough was shown to create a question of fact concerning whether those last-mentioned defendants, who profited from possessing themselves of such a substantial portion of plaintiff's business, should be held liable for damages resulting from conspiracy to obtain unjust enrichment from breach of fiduciary obligation. When Scheideler, Beck & Werner, Inc. was organized, all of the individual defendants interested therein stood in fiduciary relationship to plaintiff. The drinking of plaintiff's president, Duane Jones, may have justified defendants in quitting plaintiff, but it did not justify the new corporation and its stockholders in immediately appropriating fully half of plaintiff's business and almost its entire trained working force. What appears to have happened is that these defendants offered to buy Duane Jones' interest in plaintiff and then, when he refused to sell, took the greater part of the business and the organization without paying anything. Doubtless Duane Jones' conduct toward defendants was so exasperating as to render

what they did thoroughly understandable, but that does not render it justifiable.

This conclusion does not depend upon plaintiff's customers having been bound to continue doing business with it by contract, which they were not, nor does it involve denial of the right of defendants to leave plaintiff's employ and engage in competing activities, nor to solicit plaintiff's customers after notice of termination of defendants' relationships with plaintiff. The defendants being held did more than that.

Defendant Robert Hayes is not chargeable with liability for having resigned from plaintiff and accepted employment with a competing company, already established, even though he succeeded in obtaining at least one of plaintiff's customers. Upon the other hand, defendant Scheideler, Beck & Werner, Inc. was not an existing competitor. It was not only newly formed by the individual defendants-appellants, except defendants Burke and Hayes, but was formed for the purpose of and succeeded in absorbing and carrying on the bulk of plaintiff's business. Its trained working force was constituted out of plaintiff's skilled personnel, almost all of whom were absorbed in the new corporation. "For this problem, as for most, there are distinctions of degree" (*Meinhard* v. *Salmon*, 249 N. Y. 458, 468). In this case, all of the circumstances combined lead to the conclusion that Scheideler, Beck and Werner, Inc. was carved out of the being of Duane Jones Company, Inc., in breach of fiduciary duty, at least as fully as the new opportunity was taken from equitable assets of the former joint venture in *Meinhard* v. *Salmon,* where, as here, there was no contract with the third party to remain in relationship with the plaintiff, but merely an expectation of the continuance of the relationship which could not be appropriated by one joint adventurer in derogation of the rights of the other.

The complaint should be dismissed against defendant Frank G. Burke, Jr., as it was against the corporate defendant of which he was treasurer, Manhattan Soap Co., Inc. Burke's interest was the same as that of his corporation. There is no room for dispute that he personally stood to gain nothing from the dismemberment of plaintiff. All that he wanted, was to have the handling of the advertising of Manhattan continued in the hands of the same approximately thirty trained employees of plaintiff, who had been doing it theretofore. His so-called ultimatum to Jones that Manhattan's account would be placed elsewhere if Jones, in his drunken condition, remained in charge, was not an overt act in a conspiracy, but a simple expression of a business decision that he had a right to make. Whatever initiative he

took in the matter did not make him a conspirator, but was merely to serve the interest of his own corporation, which had come to a parting of the ways with plaintiff. Third persons should not be held liable for inducing breach of trust by others, where they are neither animated by malice (cf. *Hornstein* v. *Podwitz,* 254 N. Y. 443) nor stand to profit personally from the transaction (cf. *Keviczky* v. *Lorber,* 290 N. Y. 297, 300). The situation is more nearly akin to that in *Herring-Curtiss Co.* v. *Curtiss* (223 App. Div. 101, 120) where the court concluded that the acts of the director defendants '' which resulted in the diversion of all of the property and assets of the company to Curtiss and ultimately to companies organized by him, in which he was the principal stockholder and in which Wheeler and Baldwin were interested '' rendered them liable since they '' acted selfishly and in their own interest, and hence wrongfully and in breach of their duties as directors. We are not disposed to believe,'' the court added, that '' a conspiracy in the sense of a complete and premeditated plan to wreck the plaintiff was entered into.''

The complaint should be dismissed against the defendants Burke and Hayes, who did not benefit from plaintiff's dismemberment. Conspiracy on their part was not established, but there was conspiracy acted out, in breach of fiduciary duty, on the part of those former officers or directors or employees of plaintiff who formed, or became financially interested in, the new corporation (*Meinhard* v. *Salmon, supra*), and thus, as the jury found, wrongfully appropriated to themselves substantial assets belonging to plaintiff.

The circumstance that the third cause of action, for an accounting, has been severed and is still pending as a separate action against some of the defendants, is not a reason for denying recovery for damages. There cannot be duplication in recoveries and it may well be that recovery of damages will preclude relief to plaintiff in the accounting action now pending. No such question is presented now.

Among the defendants against whom the judgment is being affirmed, the corporation is primarily liable for the payment of the judgment, and the individual defendants are entitled to be reimbursed by it for any portions of the judgment which they personally may be compelled to pay.

Dore, J. (concurring in part and dissenting in part). Nine individual defendants, all but one, Burke, former officers or employees of plaintiff and a tenth corporate defendant, Scheideler, Beck and Werner, Inc. (herein '' Scheideler, Inc.''),

appeal from a judgment in plaintiff's favor against all ten defendants-appellants entered on a jury's verdict for $300,000 after trial before the court and a jury.

A third cause of action in equity for an accounting for profits against Scheideler, Inc. and Scheideler, Werner and Beck, individually, was severed and remains to be tried separately. On the jury's verdict in favor of defendant, Manhattan Soap Co., Inc., and one individual ex-employee defendant, Donald Gill, the complaint was dismissed against those defendants. Plaintiff does not appeal.

Plaintiff corporation is an advertising agency dominated and controlled throughout the period here in question by one Duane Jones, for many years its president and in this period, up to August 7, 1951, its chairman, thereafter again its president, owning all of its controlling stock except some Class B stock in the hands of employees. Defendant, Manhattan Soap Company, a corporation engaged in the sale of soap and soap products, was for some years a customer or account of plaintiff; defendant, Burke, is treasurer of Manhattan Soap. Scheideler, Inc. is a corporation, also an advertising agency, organized by Scheideler, Beck and Werner, three of defendants-appellants on August 22, 1951, and commencing business on September 10, 1951, and recipient thereafter of eight of the accounts formerly serviced by plaintiff.

Undisputed are the facts; that at the times in question plaintiff had no binding contracts for any definite time with any of its customers; that the customers could leave at will and plaintiff could refuse to serve them at will; that there were no contracts for any definite time with any of the employees or officers and no negative covenants were made by plaintiff's employees not to compete with plaintiff on termination of the relationship; that plaintiff could discharge its employees at will and they were free to leave at will and thereafter solicit plaintiff's accounts, and that was the way plaintiff itself got started in business. Of the nine neither Burke, Hayes nor Gill ever became associated with defendant Scheideler, Inc.; the jury properly exonerated Gill and Manhattan, but inconsistently held in Hayes and Burke.

In the two causes of action at law, the first and fourth, that alone were here tried, plaintiff sues defendants for damages to plaintiff alleged to be caused by defendants' violation of fiduciary duty in a successful conspiracy wrongfully to take from plaintiff its customers and employees while in plaintiff's employ and thus deliberately ruin plaintiff's business.

Defendants established that for some time it had been Jones' intention to permit key employees to purchase his interest and he would retire; that on July 5, 1951, they offered so to purchase that interest and on July 6, 1951, Jones issued a written statement (plaintiff's Exhibit 1) addressed " To the Staff " that: " Effective immediately and in the best interests of all concerned " he was retiring from " this agency " and Robert Hayes would " acquaint everyone with further details "; and he ended with " best of luck and fair winds and following seas "; that thereafter efforts to arrive at a definite figure for Jones' interest finally broke down on or about August 6, 1951; that on August 7, 1951, all of the defendants who were either plaintiff's officers or directors resigned as such, though they stayed on as employees at plaintiff's request and for its accommodation for various periods as employees to wind up (except that defendant Hulshizer remained in a nominal capacity as an officer and director at Jones' request to give him a quorum but did not vote); that Manhattan Soap Company retired as a customer of plaintiff on August 8, 1951, to take effect " at the earliest possible moment "; that on said date Jones wrote Burke stating he wished to part company with him and his Manhattan Soap Company " at the earliest time that can be set "; that on September 1, 1951, Jones asked all plaintiff's accounts to take their business out of the agency and thereafter eight accounts retired and in September and subsequent months in 1951 went with defendant Scheideler, Inc.; and finally that on September 27, 1951, Duane Jones carried a large advertisement in the *New York Times* stating there had been a great deal of speculation about his plans whether he was going to continue in the agency business and now he was ready to give his answer " *Emphatically Yes* "; and he then stated it was not fair to ask clients to stay with him during " my period of indecision "; and " I therefore resigned all Duane Jones accounts — unprecedented, so far as I know."

In a letter dated August 24, 1951, to Jones as plaintiff's then president, Scheideler stated that after Jones requested his resignation " I have been working in my own spare time on organizing a new agency " which will open for business on September 10th; that a number of plaintiff's clients " have been invited to join the new agency " and also plaintiff's personnel and many in both categories " have already given favorable approval." That letter and other evidence indicate that Scheideler was not surreptitiously engaged in fraud but frankly told Jones, in view of the severance of their relations, what he and the others were doing.

The charge in the complaint that Jones was falsely and maliciously defamed as to his personal habits and their effect on the business was not sustained. The contrary was shown without any effective contradiction.

It is unnecessary for us to discuss errors in the trial or the charge which would in our opinion in any event require reversal, as we have reached the conclusion on the whole record that the judgment appealed from should be reversed and the complaint dismissed. In the light of the unique and exceptional state of facts disclosed, to sustain this verdict against appellants would result in substantial injustice and the exaltation of form over substance. The line of application of the rule of fiduciary duty must reasonably be drawn. There is a recognized rule as to the fiduciary duty of partners to each other which duty is at least as rigorous as the duty of any employee to his employer. It is an established rule that the fiduciary duty one partner owes to the other may cease even before actual or technical dissolution or termination of all relations when notice has been given and the parties understand and intend that the firm shall be dissolved though the partners continue to attend to winding up partnership affairs and attempting to agree on a distribution of assets. That rule has been recognized by this court in *Bayer* v. *Bayer* (215 App. Div. 454, 461, 469, 471, 479, and cases cited [1st Dept., 1926]), and *Washer* v. *Seager* (272 App. Div. 297, and cases cited [1st Dept., 1947], affd. 297 N. Y. 918).

In each case in which there is a claim of breach of fiduciary duty, the justifiability of defendants' conduct varies with the relations of the parties, the benefit sought, the means employed and whether there is any element of breach of contract, or fraud. In this case, in the light of the relation of the parties and their customers, the absence of contract or proved fraud, the clear understanding indicated by all the facts hereinabove recited that the parties were terminating their relations at least as early as August 7, 1951, if not as early as July 5, 1951, and all involved knew it, the failure to show that defendants had enticed employees by fraud or misrepresentation from plaintiff's employment, the absence of malice and of what has been called '' disinterested malevolence '' (*Amer. Bank & Trust Co.* v. *Federal Bank,* 256 U. S. 350, 358; *Beardsley* v. *Kilmer,* 236 N. Y. 80, 90), and the lawful protection of defendants' livelihood, we think, plaintiff failed to establish actionable wrong to support this verdict against the several defendants (*Boosing* v. *Dorman,* 148 App. Div. 824; *Scott & Co.* v. *Scott,* 186 App. Div. 518, 524; *Morrison* v. *Phillips,* 147 Misc. 238, 241; *Sachter's Ice Cream Co.*

v. *Sunshine Ice Cream Co.*, 116 Misc. 428, 430). We restrict our ruling to the peculiar state of facts in this record.

Accordingly, we dissent in part and vote to reverse the judgment appealed from and to dismiss as to all defendants.

BREITEL, J. (concurring in part and dissenting in part). There is ample evidence to support the verdict of the jury. There was evidence that plaintiff corporation was despoiled of its lucrative advertising accounts by a scheme in which its employees participated in violation of their duties while still employed. In this they were guided and abetted by Burke. This consisted of encouraging plaintiff's faithless employees when encouragement was essential, of participating in consultation on strategy and by pointed suggestions to plaintiff's principal officer, director and stockholder that his continuance in the business would lose for plaintiff its most valuable advertising account. That Burke and at least one of the employees did not stand to profit personally from the diverted accounts is immaterial, provided there was knowing participation. It is neither a justification nor is it material that Burke may have had a motive to benefit his own company, the Manhattan Soap Company, if indeed the scheme was one to harm plaintiff. An outsider such as Burke, entering actively into breaches of fiduciary duty by employees, can, in the process, bring home to himself a liability. The behavior lapses of plaintiff's principal stockholder and chairman, Jones, did not and could not justify the concerted leaving of employment, solicitation and diversion of accounts, by plaintiff's employees or those who may have knowingly joined with them. The renunciation of accounts by Jones is of no conclusive significance if we credit, as apparently the jury did, that Jones was then in a position in which, as he described it, " a gun " was being held to his head. The jury on the evidence in this case was free to find that defendants schemed to despoil a helpless victim. (Defendants, in effect, attempt to justify their actions by the fact that the victim's helplessness was due to his own misbehavior.) Moreover, the jury was free to find, on the evidence adduced, that defendant employees, unable to make a deal with Jones to purchase the business out of future profits, decided to take matters into their own hands, and leave a shell of plaintiff's enterprise, a corporation without accounts or employees, and even deficient in officers and directors. The jury fixed as the damages an amount that was supportable by evidence of loss to plaintiff. The amount the jury found also bears an interesting relation to other facts in the case. When Jones and his employees negotiated they fixed a price for the

corporate stock, ownership of which of necessity would give control of the substantial cash assets of the corporation. The amount of the purchase price then being negotiated was in excess of the cash assets by approximately the amount found by the jury to have been the damages sustained by plaintiff in the loss of its accounts. Hence, defendants are required by this judgment to pay no more than they had been willing to pay, except that the time of payment has been altered by their wrongdoing and the consequences of the legal action that followed. This is not a legal point but one that goes to the justice of what the jury did and is suggestive of the wisdom that it exercised.

There is an element of sympathy for defendants in this case, and that stems from the misconduct of Jones, due to a personal failing, in the performance of his obligations to his employees and the customers of his corporation. That ground for sympathy might constitute a defense in law or morals, only if it were true, which it is not, that two wrongs can make a right. The judgment in favor of plaintiff should be affirmed in all respects.

Judgment modified so as to dismiss the complaint as to the defendants Burke and Hayes and, as so modified, affirmed. Settle order on notice.