Duane Jones Company, Inc., Appellant and Respondent, v. Frank G. Burke, Jr., et al., Respondents; Joseph Scheideler et al., Appellants, et al., Defendants.

Argued October 7, 1953; decided January 7, 1954.

*Milton Pollack, Thomas F. Boyle* and *Samuel N. Greenspoon* for appellant-respondent. I. Appellants and respondent Hayes were fiduciaries of corporate plaintiff and bore a trust obligation to it until the end of all their ties to corporate plaintiff. (*Kavanaugh* v. *Kavanaugh Knitting Co.,* 226 N. Y. 185; *Lamdin* v. *Broadway Surface Adv. Corp.,* 272 N. Y. 133; *Byrne* v. *Barrett,* 268 N. Y. 199; *Slater* v. *Detroit Graphite Co.,* 125 Misc. 183; *Sohon System* v. *Troub,* 252 App. Div. 553; *Eagle Ind. Co.* v. *Cherry,* 182 F. 2d 298; *Robb* v. *Green,* [1895] 2 Q. B. 1; *Meinhard* v. *Salmon,* 249 N. Y. 458.) II. The acts of the fiduciaries-defendants violated their trust duty to plaintiff. (*Sialkot Importing Corp.* v. *Berlin,* 295 N. Y. 482; *Lamdin* v. *Broadway Surface Adv. Corp.,* 272 N. Y. 133; *Elco Shoe Manu-*

facturers v. *Sisk,* 260 N. Y. 100; *Volk Co.* v. *Fleschner Bros.,* 273 App. Div. 994, 298 N. Y. 717; *McCaskey* v. *Cumberland Glass Mfg. Co.,* 188 App. Div. 288; *Keiser* v. *Walsh,* 118 F. 2d 13; *Eagle Ind. Co.* v. *Cherry,* 182 F. 2d 298; *Red Top Cab Co.* v. *Hanchett,* 48 F. 2d 236; *Wessex Dairies, Ltd.,* v. *Smith,* [1935] 2 K. B. 80; *Cook* v. *G. S. Deeks,* [1916] 1 A. C. 554; *Beatty* v. *Guggenheim Exploration Co.,* 223 N. Y. 294; *Murray* v. *Beard,* 102 N. Y. 505.) III. The finding of a conspiracy to commit breaches of trust and to cause intentional harm in breach of fiduciary duty made each defendant liable for the sum of the wrongful acts. (*Wechsler* v. *Bowman,* 285 N. Y. 284; *Binon* v. *Boel,* 271 App. Div. 505; *Irving Trust Co.* v. *Deutsch,* 73 F. 2d 121, 294 U. S. 708; *Burgess Bros. Co.* v. *Stewart,* 112 Misc. 347, 194 App. Div. 913; *Meredith* v. *Art Metal Constr. Co.,* 97 Misc. 69, 176 App. Div. 945; *International Longshoremen's & Warehousemen's Union* v. *Juneau Spruce Corp.,* 189 F. 2d 177, 342 U. S. 237; *Lynch* v. *Magnavox Co.,* 94 F. 2d 883; *Scavenger Service Corp.* v. *Courtney,* 85 F. 2d 825; *Winkler-Koch Eng. Co.* v. *Universal Oil Products Co.,* 79 F. Supp. 1013.) IV. Property of the corporate plaintiff was tortiously invaded by defendants. (*Keviczky* v. *Lorber,* 290 N. Y. 297; *Exchange Bakery & Restaurant* v. *Rifkin,* 245 N. Y. 260; *Truax* v. *Corrigan,* 257 U. S. 312; *Remington Rand, Inc.,* v. *Crofoot,* 248 App. Div. 356, 279 N. Y. 635; *Truax* v. *Raich,* 239 U. S. 33; *Opera on Tour, Inc.,* v. *Weber,* 285 N. Y. 348; *Advance Music Corp.* v. *American Tobacco Co.,* 296 N. Y. 79; *American Guild of Musical Artists* v. *Petrillo,* 286 N. Y. 226; *Rochette & Parzini Corp* v. *Campo,* 301 N. Y. 228.) V. Respondent Burke knowingly participated in and encouraged breaches of trust and intentional harm by fiduciaries and is liable therefor. (*Wechsler* v. *Bowman,* 285 N. Y. 284; *Lonsdale* v. *Speyer,* 249 App. Div. 133.) VI. The damages are legally proper. (*Fitzpatrick* v. *International Ry. Co.,* 252 N. Y. 127; *Robinson* v. *Insurance Co. of North America,* 198 N. Y. 523; *Bresslin* v. *Star Co.,* 166 App. Div. 89; *Rhinelander* v. *Rhinelander,* 219 App. Div. 189, 245 N. Y. 510; *Brown* v. *Rattner,* 263 App. Div. 395; *Blum* v. *Manhattan Life Ins. Co.,* 256 App. Div. 785; *Mortimer* v. *Bristol,* 190 App. Div. 452; *National Concert & Artists Corp.* v. *Murray,* 281 App. Div. 230; *Hornstein* v. *Podwitz,* 254 N. Y. 443.)

*Neil P. Cullom, Stanford Schewel* and *Robert D. Cole* for defendants-appellants. I. The motions to dismiss the complaint and for a directed verdict should have been granted because no conspiracy was proven as a matter of law. (*Carroll Bldg. Corp.* v. *Greenberg Plumbing Supplies,* 216 App. Div. 268, 244 N. Y. 543.) II. There was a complete failure of proof of the allegations of the complaint and a fatal variance between pleading and proof. (*Lifton* v. *Title Guar. & Trust Co.,* 263 App. Div. 3; *Walrath* v. *Hanover Fire Ins. Co.,* 216 N. Y. 220; *Hanrahan* v. *New York Edison Co.,* 238 N. Y. 194; *Hull* v. *Littauer,* 162 N. Y. 569; *Voorhees* v. *Unger,* 151 App. Div. 35; *People* v. *Tuczkewitz,* 149 N. Y. 240; *Schultz* v. *Manufacturers & Traders Trust Co.,* 254 App. Div. 128, 279 N. Y. 781.) III. On the facts of this case it was error for the Appellate Division to reverse as to some of the defendants and affirm as to others. (*City of Buffalo* v. *Delaware L. & W. R. R. Co.,* 176 N. Y. 308; *United States Print. & Lithograph Co.* v. *Powers,* 233 N. Y. 143; *Altman* v. *Hofeller,* 152 N. Y. 498; *Bamberg* v. *International Ry. Co.,* 121 App. Div. 1; *Loomis* v. *Lehigh Valley R. R. Co.,* 208 N. Y. 312; *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534.) IV. When the resignations of all defendants as officers and directors were tendered to and accepted by plaintiff, the '' fiduciary relation '' between plaintiff and defendants was dissolved; and thereafter they were free to compete with plaintiff. (*Hammond Oil Co.* v. *Standard Oil Co.,* 259 N. Y. 312; *Bayer* v. *Bayer,* 215 App. Div. 454; *Washer* v. *Seager,* 272 App. Div. 297, 297 N. Y. 918; *Keiser* v. *Walsh,* 118 F. 2d 13; *Zeltner* v. *Zeltner Brewing Co.,* 174 N. Y. 247; *President & Directors of Manhattan Co.* v. *Kaldenberg,* 165 N. Y. 1.) V. Defendants did not unfairly compete with plaintiff. (*Delancey Kosher Restaurant & Caterers Corp.* v. *Gluckstern,* 305 N. Y. 250; *Washer* v. *Seager,* 272 App. Div. 297, 297 N. Y. 918; *Union Car Adv. Co.* v. *Collier,* 263 N. Y. 386; *Scott & Co.* v. *Scott,* 186 App. Div. 518.) VI. Plaintiff failed to prove with '' reasonable certainty '' that it was damaged at all by defendants' conduct. (*Associated Flour Haulers & Warehousemen* v. *Hoffman,* 282 N. Y. 173; *Washer* v. *Seager,* 272 App. Div. 297, 297 N. Y. 918; *25 Fifth Ave. Management Co.* v. *Ivor B. Clark, Inc.,* 280 App. Div. 205, 304 N. Y. 808; *Union Car Adv. Co.* v. *Collier,* 263 N. Y. 386;

*Haughey* v. *Belmont Quadrangle Drilling Corp.,* 284 N. Y. 136.) VII. The Trial Judge committed reversible error in the admission of proof of damages. (*Simon* v. *Noma Elec. Corp.,* 293 N. Y. 171; *Dorville Corp.* v. *Jackson,* 278 App. Div. 796, 305 N. Y. 665; *Alexander's Dept. Store* v. *Ohrbach's, Inc.,* 269 App. Div. 321.) VIII. Plaintiff failed to allege or prove that any false or fraudulent means were used in the employment of former employees of plaintiff, and no damages were proven. (*Triangle Film Corp.* v. *Artcraft Pictures Corp.,* 250 F. 981; *De Jong* v. *Behrman,* 148 App. Div. 37; *Biber Bros. News Co.* v. *New York Evening Post,* 144 Misc. 405; *Gracie Square Realty Corp.* v. *Choice Realty Corp.,* 305 N. Y. 271; *Rager* v. *McCloskey,* 305 N. Y. 75; *Lowande* v. *Eisenberg Farms,* 260 App. Div. 48; *Kezer* v. *Dwelle-Kaiser Co.,* 222 App. Div. 350.) IX. The Trial Judge erred in the charge on the question of damages. (*Kligman* v. *City of New York,* 281 App. Div. 93; *Willis* v. *S. M. H. Corp.,* 259 N. Y. 144; *Blanchard* v. *Rome Metallic Bedstead Co.,* 184 App. Div. 187; *Streat* v. *Wolf,* 135 App. Div. 81; *Strough* v. *Conley,* 164 Misc. 248, 251 App. Div. 487; *Van Der Harst* v. *Koenig,* 249 App. Div. 235; *Wiegand* v. *Fee Bros. Co.,* 73 App. Div. 139.) X. The court committed reversible error in charging that the basis of liability was a " conspiracy " — not the commission of any wrongful or fraudulent act — and, in effect, that the jury could find against the entire twelve defendants if they found that a conspiracy had been entered into by any two thereof. (*Rhodes* v. *Ocean Acc. & Guar. Corp.,* 235 App. Div. 340; *Kellogg* v. *Sowerby,* 190 N. Y. 370; *Brackett* v. *Griswold,* 112 N. Y. 454; *Green* v. *Davies,* 182 N. Y. 499; *Almirall & Co.* v. *McClement,* 207 App. Div. 320, 239 N. Y. 630; *Dalury* v. *Rezinas,* 183 App. Div. 456, 229 N. Y. 513; *Bird* v. *Post,* 124 App. Div. 902; *Rodriguez* v. *Western Union Tel. Co.,* 259 App. Div. 224.) XI. The judgment should be reversed and the complaint dismissed as to defendant Scheideler, Inc., because of a complete failure of proof. The complaint does not allege a cause of action as to it.

*Neil P. Cullom, James E. Freehill* and *Emmet V. Murray* for defendants-respondents. I. The complaint against Burke was properly dismissed. By final adjudication the court has held that Manhattan is not a conspirator. Burke cannot, as a matter of

law, conspire with a nonconspirator. (*Washer* v. *Seager*, 272 App. Div. 297, 297 N. Y. 918; *Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430; *Beardsley* v. *Kilmer*, 236 N. Y. 80.) II. Hayes is not liable. He was never associated with the Scheideler Company or with Manhattan; he was never an officer, stockholder or employee of either and entered into no conspiracy.

LEWIS, Ch. J. The plaintiff corporation, by this action, seeks damages from the ten individual and two corporate defendants alleged to have been sustained as a result of a conspiracy by defendants to deprive plaintiff of its principal customers and its key employees.*

The plaintiff, Duane Jones Company, Inc., is an advertising agency organized in 1942 by Duane Jones who, since its founding, has been its majority stockholder and either president of the corporation or chairman of its board of directors.

The defendant Manhattan Soap Co., Inc.,— of which the defendant Burke was the treasurer and a director — is a soap manufacturer which, prior to August, 1951, had been the principal customer or " account " of the plaintiff advertising agency. The defendant Scheideler, Beck & Werner, Inc. is an advertising agency, organized in circumstances presently to be described, which was incorporated on August 23, 1951 and commenced doing business on September 10, 1951. Defendants Scheideler and Werner are former officers and employees of Duane Jones Company, Inc., who, with defendant Beck — a former employee of the plaintiff corporation — organized the defendant Scheideler, Beck & Werner, Inc. Defendants Hubbard, Hulshizer and Hughes are former officers and employees, and defendant Brooks is a former employee of the plaintiff corporation, who were subsequently employed by the corporate defendant Scheideler, Beck & Werner, Inc. Defendants Gill and Hayes are former officers and employees of the plaintiff corporation who, unlike the individual defendants (except Burke) named above, had no connection with the corporate defendant Scheideler, Beck & Werner, Inc.

---

* The amended complaint alleged four causes of action, the second of which was discontinued upon plaintiff's motion made in the course of the trial. The third cause of action sought equitable relief and was severed from the present action.

At Trial Term the jury returned a verdict dismissing the first and fourth causes of action as to the defendants Gill and Manhattan Soap Company, but gave plaintiff judgment in the amount of $300,000 against the corporate defendant Scheideler, Beck & Werner, Inc., and the individual defendants, Burke, Scheideler, Werner, Beck, Hayes, Brooks, Hubbard, Hulshizer, and Hughes.

Plaintiff did not appeal from the judgment entered upon the jury verdict dismissing the complaint as to the defendants Manhattan (plaintiff's former customer) and Gill (plaintiff's ex-officer who had not joined defendant Scheideler, Beck & Werner, Inc.).

Upon appeal by the remaining defendants from the judgment rendered against them the Appellate Division, by a divided court, so modified the judgment on the facts and law as to dismiss the complaint as a matter of law as to the defendant Burke (officer of defendant Manhattan Soap Company which had been exonerated by the jury) and as to the defendant Hayes who, like the defendant Gill, had not become associated with the corporate defendant Scheideler, Beck & Werner, Inc. The judgment against the corporate defendant and against the other individual defendants as so modified was affirmed by the Appellate Division by a divided court.

The case comes to us on appeal by the individual defendants Scheideler, Beck, Werner, Brooks, Hubbard, Hulshizer, Hughes and the corporate defendant Scheideler, Beck & Werner, Inc., from so much of the judgment entered upon the order of the Appellate Division as affirmed the judgment rendered against them in the amount of $300,000.

A cross appeal by the plaintiff requires us to review so much of the judgment as dismissed the complaint against the defendants Burke and Hayes.

Upon this appeal the defendants-appellants claim that the plaintiff failed, as a matter of law, to establish the conspiracy alleged in the complaint. We think the following facts — supported by substantial evidence of record — dictate a contrary conclusion:

In 1942, Duane Jones, a man of experience in the field of advertising, organized the plaintiff corporation. From the date

of its formation, Jones has continued to be the dominating personality and the policy maker of plaintiff corporation, which by 1951 had acquired accounts in such number and quality as produced a gross billing of $9,000,000. Plaintiff's income was derived from commissions paid to it in the amount of 15% of the sum spent by plaintiff's customers with advertising media. Plaintiff's service consisted of originating advertising ideas and campaigns satisfactory to its customers, and of arranging for the execution of such campaigns through various media. To effect that service, plaintiff referred each of its principal customers to one or more '' account executives '' in its employ who worked in close co-operation with the customer and were directly responsible for the handling of the account thus serviced. Although an advertiser might commit itself to noncancelable contracts with advertising media, it was generally not bound by any agreement with the advertising agency through which it carried on its advertising. In other words, in the case at hand plaintiff's customers were free at any time to discharge plaintiff as its agency; and similarly, plaintiff had the right at will to resign any of its accounts. Likewise plaintiff's employees were not under formal contract to it.

We come then to a consideration of evidence of the alleged conspiracy by the defendants wrongfully to deprive plaintiff of its customers and key employees. In July, 1951, plaintiff serviced approximately twenty-five customers or accounts, including the following which the amended complaint alleges were diverted to the defendant Scheideler, Beck & Werner, Inc.: Manhattan Soap Co., Inc., G. F. Heublein & Bro., Inc., International Salt Co., Inc., Wesson Oil & Snowdrift Sales Co., C. F. Mueller Co., The Borden Company, The Marlin Fire Arms Co. and McIlhenny Corp. At that time the number of plaintiff's employees was one hundred thirty-two, of whom fifteen were described by plaintiff's president as '' key men.''

During the preceding six months plaintiff had lost three of its accounts — total gross billings of which approximated $6,500,000 — and had received resignations from three executives as well as from certain staff members of the organization. It also appears that Duane Jones, the president of plaintiff

corporation, had been guilty of certain behavior lapses at his office, at business functions and during interviews with actual and prospective customers. As a result of those occasions of misbehavior, several of plaintiff's officers and directors expressed dissatisfaction with conditions — described as " intolerable " — which existed at the plaintiff agency in the spring and summer of 1951.

On June 28, 1951, a meeting took place at the Park Lane Hotel in Manhattan, which was attended by a number of the plaintiff's officers, directors and employees, including all the individual defendants named in this action except the defendant Burke. Witnesses called by the plaintiff and the defendants gave accounts which varied in minor particulars as to what transpired at that meeting of June 28, 1951. However, the choice as to which version was accurate, and as to what inferences, if any, could be drawn therefrom, was for the jury, if there was substantial evidence to support that choice. There was substantial evidence of record that at the meeting of June 28th, the defendant Scheideler informed the group that he had spoken to several of plaintiff's customers whose accounts he serviced from whom he gained favorable reaction to a proposal that the group either buy out Duane Jones' interest in the plaintiff corporation or that they form a new corporation. It also appears that Scheideler suggested to the others present that they inquire whether the accounts being serviced by them for the plaintiff would favor such a project. Defendants Scheideler and Hayes each admitted that at the June 28th meeting it was decided that Hayes should speak to Duane Jones concerning a possible purchase by the defendants of Jones' interest in the plaintiff corporation. According to Hayes, he informed Duane Jones on July 3, 1951, that the nine defendants associated with plaintiff were interested in purchasing Jones' stock in the plaintiff agency. Mr. Jones' recital of that conversation was that Hayes told him of the group's intention either to buy him out or to start their own agency, and that if he did not agree to a sale they would resign en masse within forty-eight hours. Duane Jones further testified that Hayes indicated to him that the agency's customers had been " already presold " on the alternative plan and that the group would notify him on July 5th

of the price they would pay for the business. According to Jones he said to Hayes: "In other words, you are standing there with a Colt .45, holding it at my forehead, and there is not much I can do except to give up? ", to which Hayes replied: "Well, you can call it anything you want, but that is what we are going to do."

Witnesses called by both sides testified that a meeting was held on July 5, 1951, attended by Duane Jones and the defendants who are ex-employees of plaintiff. Again, the record contains conflicting versions of what occurred. The defendants Scheideler and Hayes stated that the defendant employees made an offer to purchase Jones' stock which was accepted by Jones. Jones testified however that, after hearing the proposal submitted by Hayes as their spokesman, he "told them there was nothing I could do but accept if they had the clients all presold " and agreed to accept the proposal if it could be worked out along the lines of a plan advantageous to him tax-wise. On the following day, Duane Jones issued a statement to plaintiff's employees that he was retiring from the agency and expressing his appreciation for their past co-operation.

However, despite frequent meetings between representatives of Duane Jones and the individual defendants the proposed sale was never consummated. Negotiations terminated on or about August 6, 1951, the claim of both Duane Jones and the defendants being that the failure to agree was the result of the other's increased demands and refusal to abide by the terms allegedly decided upon at the meeting of July 5th.

On August 7, 1951, there was held a special meeting of the board of directors of plaintiff corporation, at which there were presented and accepted written resignations by the defendants Scheideler, Werner, Hayes, Gill, Hubbard and Hughes as officers and as directors of plaintiff. The resignations were substantially identical in form; each was a resignation effective only insofar as the writer was a director or officer, or both, of plaintiff; each contained a statement that the writer would continue his duties as an employee of the plaintiff agency, and stated "As an employee, I will continue to service those accounts now assigned to me, to the best of my ability."

Defendant Hulshizer testified that he submitted an oral resignation as officer, director and employee of plaintiff corporation at the meeting held August 7, 1951, but that, at the request of Jones, he agreed to stay on "in a nominal capacity" because if he resigned there would not be a quorum of the board of directors. The witness stated that he acted as secretary of the corporation and retained possession of the corporate records until September 26, 1951; that he continued as an employee of plaintiff until September 30, 1951, having been told by Jones that his services would not be required after that date. Also on August 7th, defendant Manhattan Soap Co. wrote a letter to Scheideler informing him that "With reference to the various conversations and meetings which we have held in regard to the make-up of the Duane Jones Company, we now wish to tell you that, as the agency is now constituted, we will move our account from the Duane Jones Company not later than September 30, 1951." On August 10, 1951, defendant Scheideler addressed a letter to Duane Jones stating that he was resigning as of September 30, 1951.

A special meeting of the board of directors of plaintiff was held August 17, 1951, at which the resignation of defendant Scheideler as an employee was read and — in view of his status as a member of the plaintiff's pension trust plan — it was "RESOLVED, that action upon the resignation of Mr. Scheideler as employee of this Company be suspended pending an investigation of his conduct to determine if he should be discharged for cause." At that meeting the board also voted to discharge immediately and for cause (with two weeks severance pay) the defendants Hayes, Hughes, Hubbard, Beck and Brooks. On the same date, the defendant Werner submitted his resignation as an employee, effective September 15th, and thereafter on August 23d he submitted a second resignation effective immediately.

Despite their resignations as employees of plaintiff, defendants Scheideler, Werner and Hulshizer testified that they continued to receive payments from, and to perform services for, plaintiff for varying periods of time extending to September 30, 1951. Scheideler stated that he rendered services to plaintiff during August and September, 1951, and that he received

salary payment through September 14, 1951. Werner testified that he serviced accounts for plaintiff in the period from August 15 to September 15, 1951 — during which time he signed and received payment on petty cash slips drawn upon plaintiff — and that he received a salary up to September 15, 1951. Defendant Hulshizer worked at plaintiff's office until September 30, 1951, and received his last salary check from plaintiff on September 28, 1951. With regard to the defendants discharged for cause on August 17th, Duane Jones testified that he asked the men " as a matter of courtesy " to stay on until they could be replaced and that the severance pay was intended to cover their services during that holdover period.

On August 22, 1951, the defendants Scheideler, Werner and Beck signed a certificate of incorporation of the defendant Scheideler, Beck & Werner, Inc., which certificate was filed with the Secretary of State on August 23, 1951. A few days later, on August 30th, the corporate defendant executed a lease of office space at 487 Park Avenue, where it opened for business as an advertising agency on September 10, 1951.

Within six weeks after its formal opening, the defendant Scheideler, Beck & Werner, Inc., had in its employ seventy-one of the one hundred thirty-two persons formerly employed by plaintiff, including the defendants Scheideler, Werner, Beck, Hughes, Brooks, Hubbard and Hulshizer. Each of the defendants named above was a stockholder in the corporate defendant, and the defendants Scheideler, Werner, Hulshizer and Beck held the offices of president, vice-president, secretary and treasurer of the corporation respectively. Upon this subject, Scheideler testified that, on August 21, 1951, he had informed an officer of Manhattan Soap Co. that he (Scheideler) had " decided definitely to go ahead " with the creation of a new agency and that he had already solicited several key employees, some of whom were then employed by plaintiff, including the defendants Hughes, Beck, Hubbard and Werner. According to Scheideler's further testimony it appears that prior to August 23d he had solicited an assistant account executive — whom he considered a valuable employee of the plaintiff — to become an employee of Scheideler, Beck & Werner, Inc. Similarly, the defendant Hulshizer became secretary of defendant corpora-

tion on August 23d when — to Scheideler's knowledge — he was still an employee and officer of plaintiff. Hulshizer testified that it was "quite possible" that he had been invited by Scheideler between August 1st and August 15th to become a part of the Scheideler, Beck & Werner agency. In that connection, it appears that in August, 1951, the services of Richard Stevens were secured as business manager of Scheideler, Beck & Werner, Inc.— the position held by Stevens with Duane Jones Company immediately prior to his employment by Scheideler. By his own admission, Scheideler instructed Stevens to get the personnel necessary to staff the corporate defendant on the basis of an anticipated annual billing of $4,500,000 — the average requirements in the business being fourteen people per million dollars of billings. Scheideler said that he "instructed Stevens to secure the proper personnel to fill various departments wherever he could secure them", but that he thought it "Most likely" Stevens would obtain the necessary employees from the ranks of plaintiff Duane Jones Company.

Upon the question of accounts or customers, it appears that, at the time of its opening or shortly thereafter, defendant Scheideler, Beck & Werner, Inc., had as accounts Manhattan Soap Co., G. F. Heublein, International Salt, Wesson Oil, C. F. Mueller Company, The Borden Company, Marlin Fire Arms, McIlhenny Corp., Haskins Bros. and Continental Briar Pipe, all of which were customers of plaintiff prior to the formation of defendant Scheideler, Beck & Werner, Inc. The evidence with regard to the transfer of each of the above accounts is as follows: Manhattan Soap Co. and its affiliate, Haskin Bros., were solicited by Scheideler in August, 1951. Scheideler had however discussed the proposed purchase of Duane Jones' interest in plaintiff with defendant Burke, an officer of Manhattan, a day or two prior to the meeting at the Park Lane Hotel on June 28th and Burke had received almost daily reports of the negotiations looking toward a change in the organization of plaintiff agency.

G. F. Heublein became a customer of defendant corporation in the middle of September, 1951, as a result of solicitation by the defendant Werner on August 29th. Immediately prior

thereto, Werner had been account executive of the Heublein account for plaintiff corporation, to which he submitted a resignation on August 23d but for which he continued to service accounts until September 15th.

International Salt Co. became a customer of Scheideler, Beck & Werner, Inc., in the early part of September, 1951, following solicitation by defendant Werner — who was also plaintiff's account executive for International Salt — on August 24, 1951.

Defendant Scheideler testified that the Wesson Oil account "walked in off the street" as a customer of the corporate defendant, without solicitation. However, the witness admitted that he had for years been servicing the Wesson account for plaintiff and that the advertiser was one which he had approached prior to the meeting of June 28th on the matter of buying out Duane Jones' interest in plaintiff.

The C. F. Mueller Company transferred its business to Scheideler, Beck & Werner, Inc., after having been solicited by defendant Hulshizer, who handled the account for plaintiff, on a date between August 28th and September 7th.

The Borden Company became an account of the corporate defendant after August 31st through the solicitation of defendants Scheideler and Beck, who had supervised the account while employed by plaintiff.

Scheideler, Beck & Werner, Inc., acquired the account of Continental Briar Pipe Company in the latter part of 1951 through the efforts of defendant Werner, its former account executive with plaintiff.

The remaining two accounts — Marlin Fire Arms and McIlhenny Corp.— came to defendant corporation by reason of solicitation of those accounts by Philip Genthner, a former account executive and employee of the plaintiff agency who, at the request of defendant Scheideler, resigned his position with plaintiff and became associated with Scheideler, Beck & Werner, Inc. Scheideler testified that he approached Genthner early in September, 1951, while the latter was "a valued employee of the plaintiff corporation" and requested him to join the Scheideler firm; that he (Scheideler) told Genthner at that time that he wanted Genthner "for the purpose of soliciting business"; that Genthner was known to be working for

plaintiff on the Marlin Fire Arms and McIlhenny accounts; and that those accounts came to defendant corporation from plaintiff at about the same time that Genthner became associated with the Scheideler agency.

On August 24, 1951 — the day following incorporation of defendant Scheideler, Beck & Werner, Inc.— defendant Scheideler addressed a letter to Duane Jones as president of plaintiff corporation which read in part:

"Dear Duane: Several weeks ago, in a letter sent to the Manhattan Soap Company (copy of which you sent me), you requested my resignation. On August 10, 1951, I answered this request by memo, stating that September 30, 1951 be the effective date. This would allow ample time to arrange affairs of the clients I am servicing. To date, all work has been carried out to these clients' complete satisfaction.

Since this, I have been working in my own spare time on organizing a new agency. This has now been set up and will formally open for business September 10, 1951.

A number of Duane Jones Company clients and several other companies have been invited to join the new agency. Also, a number of Duane Jones Company personnel as well as other people have been invited to join the new agency. Many in both categories have already given verbal approval. They will advise you directly as to their intentions. * * * "

Duane Jones testified that, prior to receipt by him of the letter last quoted above, he had not been informed by any of the defendants, either directly or indirectly, that they had invited plaintiff's customers or personnel to join a new agency. That testimony is supported by statements by the defendants Werner and Hulshizer that they had not revealed either to plaintiff or to Duane Jones their intention to solicit for the Scheideler organization accounts handled by them at plaintiff agency.

The foregoing evidence has led us to conclude that the conduct of the individual defendants-appellants as officers, directors or employees of the plaintiff corporation " * * * fell below the standard required by the law of one acting as an agent or employee of another." (*Lamdin* v. *Broadway Surface*

*Adv. Corp.*, 272 N. Y. 133, 138.) Each of these defendants was " * * * prohibited from acting in any manner inconsistent with his agency or trust and [was] at all times bound to exercise the utmost good faith and loyalty in the performance of his duties." (*Id.*, p. 138.) Plaintiff's evidence — which the jury apparently believed — established that on June 28, 1951, the individual defendants-appellants met and agreed to take over the business of the plaintiff agency, either by purchase of the controlling interest in the corporation or by resignation en masse and the formation of a new agency; that at that meeting it was proposed that the defendants contact plaintiff's customers whose advertising accounts were then being serviced by the defendants as account executives of plaintiff, with referance to prospective control of plaintiff's business by the individual defendants; that on July 3d the employees-defendants offered to purchase, at a fixed price, the controlling interest in plaintiff agency and stated that, if the offer were not accepted, they would resign and that plaintiff's customers had been " presold " on the proposed action; that a day or two after termination of unsuccessful negotiations for their purchase of the stock, the defendants who were officers and directors submitted to plaintiff their resignations from those positions, all (save one) of which resignations were received by plaintiff on the same day and were in substantially identical form; that three of the individual defendants immediately commenced negotiations leading to the incorporation on August 23d of a rival advertising agency which agency commenced operations on September 10th; that, at or about the time it commenced business, the defendant agency had as its customers nine accounts formerly serviced by plaintiff and employed more than 50% of plaintiff's personnel; that the accounts and personnel were acquired through solicitation by, or at the direction of, the individual defendants prior to or during the period when they were completing their duties as employees of plaintiff; and finally, that the rival agency was formed and the accounts and personnel were solicited without disclosure of such activities to plaintiff.

The inferences reasonably to be drawn from the record justify the conclusion — reached by the jury and by a majority of the

Appellate Division — that the individual defendants-appellants, while employees of plaintiff corporation, determined upon a course of conduct which, when subsequently carried out, resulted in benefit to themselves through destruction of plaintiff's business, in violation of the fiduciary duties of good faith and fair dealing imposed on defendants by their close relationship with plaintiff corporation. The jury's determination of those questions of fact — affirmed by the Appellate Division — is beyond our power to disturb. '' If conflicting inferences are possible as to abuse or opportunity, the trier of the facts must make the choice between them. There can be no revision in this court unless the choice is clearly wrong.'' (*Meinhard* v. *Salmon*, 249 N. Y. 458, 467.)

Nor is it a defense to say that the defendants-appellants did not avail themselves of the benefit of the customers and personnel diverted from plaintiff until after defendants had received notice of discharge or had informed plaintiff of their intention to leave Duane Jones Company. Upon this record the jury might have found that the conspiracy originated in June or July while a fiduciary duty existed, and that the benefits realized when defendant Scheideler, Beck & Werner, Inc., commenced operation in September were merely the results of a predetermined course of action. In view of that circumstance, the individual defendants would not be relieved of liability for advantages secured by them, after termination of their employment, as a result of opportunities gained by reason of their employment relationship. (*Byrne* v. *Barrett*, 268 N. Y. 199, 206–207; and see *Volk Co.* v. *Fleschner Bros.*, 298 N. Y. 717.)

Defendants assert that the complaint against them should have been dismissed by the trial court because of what they describe as a '' fatal variance between pleading and proof ''. It is their position that the complaint alleges a conspiracy '' organized '', '' conceived '', '' executed '' and '' masterminded '' by the defendants Burke (treasurer of Manhattan) and Manhattan Soap Company; that plaintiff failed to prove wrongful conduct on the part of Manhattan (which was exonerated by the jury) or by the defendant Burke (as to whom the Appellate Division dismissed the complaint); that, lacking such proof, the remaining defendants may not be held liable

under the amended complaint served herein. A reading of the amended complaint convinces us to the contrary. That pleading contains allegations sufficient in law to allege a cause of action for conspiracy against the defendants other than Burke and Manhattan, irrespective of proof which might be presented as to the latter two defendants.

Defendants-appellants also urge as a basis for reversal of the judgment rendered against them, that plaintiff failed sufficiently to establish a causal relationship between damages sustained by plaintiff and the alleged wrongful conduct by the defendants. For this argument defendants rely upon (1) the fact that none of the accounts serviced by plaintiff were under contract to plaintiff agency, and (2) the fact that there is evidence of record from which it may be inferred that plaintiff had " resigned " all of its accounts in August, 1951, prior to the solicitation of such accounts by the individual defendants. Plaintiff was not required to show interference by defendants with existing contractual relationships in order to impose liability in the present action. (*Union Car Adv. Co.* v. *Collier,* 263 N. Y. 386, 401.) As was said in *Keviczky* v. *Lorber* (290 N. Y. 297, 306): " ' An injury to a person's business by procuring others not to deal with him, or by getting away his customers, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong.' (2 Cooley on Torts, § 230.) " Moreover, there is evidence of record from which the jury might have inferred that the loss of customers suffered by plaintiff in August and September, 1951, was the direct result of defendants-appellants' activities immediately prior thereto. Plaintiff introduced evidence of the customers it had serviced for varying periods of time prior to June 28, 1951, and which it was then servicing; it established activities by defendants as to demands made upon plaintiff to surrender the business to defendants, accompanied by threats of mass resignation pursuant to a scheme reputed to have been " presold " to the customers; it proved solicitation by defendants of plaintiff's accounts and personnel, and, finally, it established a mass exodus to the corporate defendant of plaintiff's customers and a majority of its key personnel. Upon that state of the record, the jury was entitled

to find that plaintiff's losses were a proximate result of defendants' conduct. (*Keviczky* v. *Lorber, supra,* p. 302.)

With regard to proof of plaintiff's resignation of accounts, we agree with the statement by one of the Justices at the Appellate Division that " The renunciation of accounts by Jones is of no conclusive significance, if we credit, as apparently the jury did, that Jones was then in a position in which, as he described it, ' a gun ' was being held to his head " (281 App. Div. 629). On the record before us the jury could have found that Jones' action was only an intermediate result of defendants' predetermined conduct which, when carried to completion, resulted in the ultimate acquisition by defendant Scheideler, Beck & Werner, Inc., of the accounts formerly serviced by plaintiff.

Plaintiff established that the Pharmaco account — one of its customers which did not go to Scheideler, Beck & Werner, Inc., but which was alleged by the amended complaint to have been lost through defendants' misconduct — had an annual gross billing of $650,000. There was evidence that the defendant Hayes handled the Pharmaco account for plaintiff and that, after his resignation from plaintiff, he became associated with the rival firm of Doherty, Clifford, Steer & Shenfield, to which the Pharmaco account transferred. Hayes testified that he " introduced " Pharmaco to his new employer.

Moreover, defendants' answer alleged that, in the course of negotiations looking toward defendants' acquisition of Duane Jones' interest in plaintiff, defendants offered Jones: " $700,000 in installment payments over a period of five years; and, in addition thereto, ½ of 1 per cent of the commissions of all accounts as of record for a period of five years, based upon 1951 appropriations, which would amount to approximately $45,000 per annum, and ¼ of 1 per cent of said commissions for a further period of five years which would amount to approximately $22,500 per annum for said second five-year period: * * * ". Implicit in that pleading are admissions by the defendants that, according to their own estimates based upon 1951 appropriations, plaintiff had reasonable expectations of annual gross billings of approximately $9,000,000, which billings could be expected to continue undiminished for a period of ten years.

Nor do we agree with defendants' claim that the trial court's charge with respect to damages was so erroneous as to require a reversal of the judgment. Indeed, in view of the fact that the charge on damages covers approximately four and one-half pages of the printed record, we doubt that the general exception taken by defendants' counsel " to measure of damages " was sufficient to preserve for appeal the alleged error now asserted with respect thereto. (*Fitzpatrick* v. *International Ry. Co.*, 252 N. Y. 127, 140–141.) At the request of the jury, the charge with regard to damages subsequently was reread, after which defendants' counsel excepted to the repetition of the charge " and particularly in that repetition to the statement to the effect that the jury may award damages up to the present date ". Defendants have failed to cite any authority for the position now urged by them — viz., that plaintiff may not recover damages sustained up to the time of trial — nor do they suggest a date which they would approve as a proper date for termination of the assessment of plaintiff's loss. If plaintiff established wrongful conduct by defendants as alleged in the amended complaint — and the jury found that it did — it was entitled to recover as damages the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct. (*Keviczky* v. *Lorber, supra,* pp. 305–306.) Under the facts here presented, plaintiff's loss was a continuing one extending at least up to the date of trial. It is no answer that the amount of profit plaintiff would have made cannot be definitely established by proof at the trial. " There is no good reason for requiring any higher degree of certainty in respect to the amount of damages than in respect to any other branch of a cause. Juries are allowed to act upon probable and inferential as well as direct and positive proof. And when from the nature of the case the amount of the damages cannot be estimated with certainty, or only a part of them can be so estimated, no objection is perceived to placing before the jury all the facts and circumstances of the case having any tendency to show damages or their probable amount, so as to enable them to make the most intelligible and accurate estimate which the nature of the case will permit." (1 Sutherland on Damages [4th ed., 1916], § 70.)

We are thus brought to defendants' final argument urged upon this appeal, which we regard as valid and which requires a reversal in part of the judgment entered upon the order of the Appellate Division. We refer to defendants' claim that the amended complaint now before this court does not state a cause of action against the defendant Scheideler, Beck & Werner, Inc. As we have seen, the amended complaint originally served by plaintiff attempted to allege four causes of action. By the third cause of action — which was alleged to be " against Scheideler, Beck & Werner, Inc. and Joseph Scheideler, Paul Werner and Joseph Beck individually " — plaintiff charged that the corporate defendant had received business accounts and good will wrongfully diverted from plaintiff and demanded that such accounts and good will, together with the stock in defendant corporation, be impressed with a trust in favor of the plaintiff. That cause of action for equitable relief was severed from the present action, and only the first and fourth causes of action were submitted to the jury and are before us on this appeal. It appears from a reading of the amended complaint that it does not contain an allegation of wrongful conduct by the corporate defendant under the first or fourth cause of action. Plaintiff has further failed to allege the corporate existence of the defendant Scheideler, Beck & Werner, Inc., as required by rule 93 of the Rules of Civil Practice, and has omitted the corporation from the lists of defendants alleged in the Forty-Sixth and Sixty-Fifth paragraphs of the amended complaint to have conspired against plaintiff. In those circumstances, we conclude that the judgment rendered against the defendant Scheideler, Beck & Werner, Inc., should be reversed.

*With regard to the cross appeal by plaintiff,*
*Duane Jones Company, Inc.*

Plaintiff's cross appeal is from so much of the judgment entered upon the Appellate Division order as modified the judgment of Trial Term and dismissed the complaint as a matter of law against defendants Burke and Hayes. It will be recalled that the defendant Burke was treasurer of plaintiff's principal customer, the defendant Manhattan Soap Company, which company was exonerated by the jury from any participation in the

conspiracy alleged in the amended complaint. Defendant Hayes is a former officer and employee of plaintiff who resigned from Duane Jones Company in the summer of 1951 but who did not become associated with the corporate defendant Scheideler, Beck & Werner, Inc.

With regard to the judgment for plaintiff entered upon the jury verdict, the Appellate Division order directed " that the said judgment so appealed from be and the same is hereby modified on the facts and the law so as to dismiss the complaint as a matter of law against defendants Burke and Hayes, the Court having considered the questions of fact and having determined that it would not grant a new trial upon those questions; * * * ''. (For the basis of the action by the Appellate Division, see 281 App. Div. 622, 623–625.)

We agree with the conclusion reached by the Appellate Division with respect to defendant Burke, the officer of the defendant Manhattan Soap Company. The theory of plaintiff's action against that corporate defendant, as set forth in the amended complaint, was that Burke, as an officer of Manhattan, made " unusual and irregular financial demands on the plaintiff "; that, on the refusal of such demands by plaintiff, Burke and Manhattan entered upon a course of conduct and conspired with the defendant Scheideler, to destroy plaintiff's business. There is nothing in the record to support the allegations that demands made by Burke or Manhattan were anything in the way of monetary payments from the plaintiff nor were those demands legally irregular. There is no evidence from which it may reasonably be inferred that Burke's conduct was directed toward the willful and intentional destruction of plaintiff's business. On the contrary, plaintiff's evidence shows that, during the course of the negotiations for the sale of Jones' interest in the plaintiff corporation, defendant Burke agreed, at Jones' request, to take an active part in arriving at a satisfactory agreement with the nine individual defendants. It was established that neither Burke nor his principal the defendant Manhattan Soap Company had any interest in Scheideler, Beck & Werner, Inc., and that they acquired none of the employees which plaintiff alleges were wrongfully diverted from it. Concededly, plaintiff made no claim that Burke or Manhattan made

any profit or received any financial advantage from the resignation of the nine defendants whom plaintiff considered key employees. In that connection the fact is of paramount importance that no fiduciary relationship existed between plaintiff and its customer Manhattan and the latter's officer, Burke, whose only interest was as treasurer of a corporation, the gross advertising billings of which averaged $3,000,000 to $4,000,000 a year spent through the plaintiff agency. Burke did not attend the meetings of the defendants-appellants held on June 28th, July 3d and July 5th. Indeed, a reading of the record as a whole leads one to conclude that Burke's conduct in the summer of 1951 was motivated by a sincere concern for the welfare of his employer, Manhattan Soap Company, rather than by a desire to injure plaintiff's business. The jury has determined that the action of Manhattan, through its employee and agent Burke, did not constitute participation in the wrongful conspiracy alleged by plaintiff. In view of that circumstance, and upon the record before us, we think the Appellate Division was correct insofar as it directed dismissal of the amended complaint against the corporation's agent, Burke.

We reach a contrary conclusion with regard to the defendant Hayes. The Appellate Division apparently based its action in dismissing the complaint, as a matter of law, against Hayes upon its determination that, inasmuch as the defendant '' derived no profit from the new corporation '', conspiracy on his part was not established. There is evidence of record, however, that Hayes participated in each of the meetings relied on by plaintiff as establishing the conspiracy. In fact, he was the spokesman for the individual defendants-appellants at the meeting with Duane Jones on July 3d, and it is he who, according to plaintiff's witness, Jones, delivered the ultimatum that Jones must either sell out at the defendants' price or see plaintiff's staff resign en masse pursuant to a plan already '' presold '' to plaintiff's customers. His resignation as officer and director of plaintiff was received on the same date and in the same form as those of the other defendants who are former officers of plaintiff corporation. The fact that, after his separation from the plaintiff agency, the defendant Hayes did not

become associated with the defendant Scheideler, Beck & Werner, Inc., is not conclusive as to his liability in the present action. Nor may it be said that he did not benefit from plaintiff's dismemberment. The record shows that, following his resignation from plaintiff, Hayes became associated with the rival advertising agency of Doherty, Clifford, Steers & Shenfield. It also appears, as we have seen, that after Hayes' transfer, Pharmaco Co. — an account which he had serviced as one of plaintiff's account executives, and which is alleged to have been lost by plaintiff as a result of the conspiracy charged in the amended complaint — moved its account from plaintiff to the Doherty agency with which Hayes had become associated. Indeed, Hayes testified that it was he who " introduced " Pharmaco to his new employer. The prevailing opinion at the Appellate Division recognized that Hayes had been instrumental in diverting at least one of plaintiff's customers. There it was said: " Defendant Hayes is not chargeable with liability for having resigned from plaintiff and accepted employment with a competing company, already established, even though he succeeded in obtaining at least one of plaintiff's customers ". Upon that state of the record, we think the jury was warranted in its finding, as alleged in the amended complaint, that the defendant Hayes conspired to destroy plaintiff's business and that, pursuant to that conspiracy, plaintiff lost at least one account which it formerly held. Inasmuch as the Appellate Division modified the judgment and dismissed the complaint as to Hayes as a matter of law and affirmed the findings of fact made in the court below, the judgment entered upon the order of the Appellate Division — insofar as it dismissed the amended complaint against the defendant Hayes — should be reversed and as to him the judgment of the trial court should be reinstated.

Having considered all other matters to which the briefs of counsel direct our attention, we reach the following conclusion:

On the appeal by the defendants-appellants, the judgments should be so modified as to reverse so much thereof as award recovery against the corporate defendant-appellant, and to dismiss the first and fourth causes of action against the said corporate defendant-appellant.

Upon the appeal by plaintiff, the judgment should be so modified as to reverse the judgment insofar as it dismisses the amended complaint against the defendant Hayes, and, as to said defendant, the judgment of the Trial Term should be reinstated, with costs in all courts.

As so modified, the judgment should be in all other respects affirmed, with costs in this court to plaintiff-respondent against the individual defendants-appellants; with costs in all courts to the corporate defendant-appellant against plaintiff-respondent, and with costs in this court to defendant-respondent Burke against plaintiff-appellant.

CONWAY, DESMOND, DYE, FULD and FROESSEL, JJ., concur; VAN VOORHIS, J., taking no part.

Judgment accordingly.