RAYMOND J. JOHNSON, Plaintiff and Appellant, *v.* H. E.
FURGESON et al., Defendants and Respondents.

No. 12036.
Decided October 20, 1971.
489 P.2d 1032.

Boyd & Radonich, Robert J. Boyd (argued), Anaconda, William R. Taylor (argued), Deer Lodge, for appellant.

Poore, McKenzie & Roth, Urban L. Roth (argued), Butte, Sandall, Moses & Cavan, Charles F. Moses (argued), Billings, Peter L. Rapkoch, Lewistown, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an action by Raymond J. Johnson against H. E. Furgeson, L. C. Johnston, and William G. Cheney, as individuals, for the conversion of five Black Angus cows, three Black Angus calves, and two branding irons. Plaintiff alleges he is the rightful owner of the cows, calves, and branding irons; that defendants have wrongful possession; that plaintiff has made demand for their return; that defendants have refused to return them; and, plaintiff has suffered damages as a result. Plaintiff appeals from an order of the district court of the third judicial district, Deer Lodge County, granting defendants' motions for summary judgment, and denying plaintiff's motion to reassess and retax costs.

The facts are: H. E. Furgeson is president of Mount Haggin Livestock, Inc. and manager of the Willow Glen Ranch, a part of Mount Haggin Livestock, Inc. L. C. Johnston is an employee of the Montana State Livestock Commission. William G. Cheney is the Executive Officer and General Recorder of Marks and Brands for the Montana State Livestock Commission. Plaintiff is a rancher who owns and operates a ranch a few miles northeast of the city of Anaconda.

It is undisputed that on June 29, 1968, or some earlier date, three employees of Mount Haggin Livestock, Inc., and two sons of plaintiff, rounded up 25 Black Angus cows and 9 Black Angus calves on plaintiff's ranch and herded them into plaintiff's corrals. At approximately 2 p.m. on June 29, 1968, L. C. Johnston arrived at plaintiff's ranch to inspect the brands on the rounded up cattle. Johnston noted that 19 cows carried

the "double-slash" brand of Mount Haggin Livestock, Inc.; that 5 cows carried two brands (a "double-slash" brand and an "L backward 2" brand); that one cow carried only an "L backward 2" brand; that three of the double-branded cows had calves at their side; that the cow with the single brand ("L backward 2") had no calf at its side; and, that one of the cows branded with the "double-slash" only, was "wet" but had no calf at its side.

Johnston, with the consent and cooperation of plaintiff, removed all 25 cows and the 9 calves from plaintiff's ranch. Plaintiff did not object to their removal, but did object to their destination. Plaintiff wanted the livestock taken to the public yards in Butte, while Johnston successfully insisted they be taken to the Willow Glen Ranch. Johnston also took possession of a "L backward 2" branding iron but returned it the following day.

On July 6, 1968, Johnston, accompanied by William G. Cheney and a deputy sheriff armed with a search warrant, returned to plaintiff's ranch to look for "double-slash" branded cows, "L backward 2" branded cows, and a "L backward 2" branding iron. The fruits of the search included one "double-slash" branded cow with an unbranded calf at her side, plus two "L backward 2" branding irons. On that same day, Johnston and Cheney rounded up 10 of plaintiff's calves and transported them to the Willow Glen Ranch for motheringup purposes with the 25 cows taken into custody on June 29, 1968. None of the calves mothered to the cows and the calves were returned to plaintiff.

On July 16, 1968, two of the impounded double-branded cows were slaughtered and a biopsy of their hides removed for the purpose of determining the relative ages of the two brands. Cheney took the biopsies to the University of Oregon for examination and analysis. There is testimony, via deposition, whereby Johnston claims the "double-slash" brand was the older of the two brands.

Plaintiff prays for judgment in the amount of $1650 compensatory damages, $25,000 exemplary and punitive damages, and costs of maintaining this action.

As of the date of the ruling by the district court, the disposition of the livestock and branding irons was: 2 of the cows were still impounded at the Willow Glen Ranch; 2 had been slaughtered and proceeds from them were in the custody of the Montana State Livestock Commission; 1 cow had died of unknown or undisclosed cause; and, the branding irons were in the custody of defendant Johnston, acting for the Montana State Livestock Commission. The evidence is vague as to the whereabouts of the 3 calves that were at the sides of the double-branded cows on June 29, 1968, but it appears they were also at the Willow Glen Ranch.

Plaintiff contends that his brand is described as an "L attached G" and the branding irons confiscated were the proper irons for applying that brand. William G. Cheney testified the confiscated irons were for a "L backward 2" brand and that particular brand was recorded in the name of Raymond H. Johnson ,and not to plaintiff—Raymond J. Johnson. Raymond H. Johnson is plaintiff's son. Cheney further testified the "L backward 2" brand that had been used by plaintiff had been applied to the cows in such a manner as to be "hardly describable."

The district court granted summary judgment on the evidence and testimony submitted by way of exhibits and depositions. All points of law and fact were briefed and orally argued before the court. The court granted each of defendants' motions for summary judgment.

Following the hearing and after judgment had been entered, defendant Furgeson filed a memorandum of costs (1) for the taking of the deposition of plaintiff, and (2) costs for having copies made of the depositions taken by plaintiff of all the defendants. The memorandum of costs alleges total disbursements in the amount of $377.75; $362.75 represents disburse-

ments for depositions, the remaining $15 represents court clerk fees. Plaintiff filed a motion to reassess and retax costs alleging that discovery depositions and copies of depositions are costs to be borne by the party benefited. Plaintiff's motion to reassess and retax costs was denied. From the order granting defendants' motions for summary judgment and the order denying plaintiff's motion to reassess and retax costs, plaintiff appeals.

The issue raised are (1) whether the district court erred in granting defendants' motions for summary judgment, and (2) whether the district court erred in denying plaintiff's motion to reassess and retax costs.

Plaintiff's complaint recites that it is an action for damages for wrongful conversion of personal property. The essential elements of proof required to sustain an action for conversion are "(1) Plaintiff's ownership and right of possession of the chattel involved; (2) conversion thereof by the defendants; and (3) resulting damages." Bohart v. Songer, 110 Mont. 405, 409, 101 P.2d 64, 66; Klind v. Valley County Bank of Hinsdale, 69 Mont. 386, 222 P. 439.

Plaintiff contends there is a triable issue of material fact in that the ownership of the double branded cows and their calves, as well as the branding irons, has not been resolved. However, this matter is immaterial because there simply is no showing of any wrongful conversion.

As to the two defendant employees of the Montana State Livestock Commission, the complaint and depositions make it clear that they had probable cause for their actions under sections 46-701, 46-706 and 46-803, R.C.M.1947. Cattle bearing two brands, where no transfer of ownership was shown, gives them the right, yea, the duty, under the statute to seize and to kill the animals to establish the mark or brand altered or defaced, upon paying the owner the value of the animals. Eventually, the rightful owner will be found, but at this point there simply can be no "wrongful conversion." The two defend-

ant employees, or the state which employs them, are simply stakeholders until the rightful owner is determined.

Although plaintiff has sued defendants in their individual capacities and not as agents of the Montana State Livestock Commission, the record is replete with testimony that the defendants Cheney and Johnston were acting within the scope and authority of their respective offices, and that defendant Furgeson's participation in the alleged conversion was at the request and direction of state officers. Furgeson's role was that of an involuntary bailee, stakeholder, or temporary agent of the Montana Livestock Commission.

Failing to establish wrongful conversion by the defendants, plaintiff's proof of damages becomes moot and defendants' motions for summary judgment were properly granted. As stated in Brown v. Thornton, 150 Mont. 150, 432 P.2d 386, a motion for summary judgment is properly granted where it is apparent from the record that there is no genuine issue as to any material fact, not withstanding aggrieved party's argument on appeal that had he been allowed to go to trial he would have presented proof establishing ownership of property and an agreement to pay for materials.

Although here rightful ownership of the property in question has not been resolved, if plaintiff has any real claim to the cows, calves and branding irons, he is not without a remedy. Section 95-715, R.C.M., provides:

"Any person claiming the right to possession of property seized as evidence may apply to the judge to whom it has been delivered for its return. * * *"

Plaintiff's second issue on appeal is that the district court erred in denying his motion to reassess and retax costs relating to the depositions taken by both plaintiff and defendant Furgeson, totaling $362.75.

The record on appeal consists of four depositions: one of defendant Furgeson; one of defendant Cheney; and two of defendant Johnston. Plaintiff's deposition was also taken at the

request of counsel for Furgeson, but was never filed with the district court nor made a part of the record on appeal. All of defendants' depositions were taken at the request of plaintiff's counsel, were filed with the district court, and are part of the record on appeal. Furgeson's counsel had copies made of all of the defendants' depositions and has included the cost of all copies, plus the cost of taking plaintiff's deposition, in his memorandum of costs.

Rule 54(d), M.R.Civ.P. provides:

"Except when express provision therefor is made either in a statute of the state of Montana or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs  *  *  *."

While Rule 54(d), M.R.Civ.P., provides that costs may be awarded to the "prevailing party," section 93-8618, R.C.M.1947, enumerates, with particularity, just what are allowable costs and disbursements. It provides:

"A party to whom costs are awarded in an action is entitled to include in his bill of costs his necessary disbursements, as follows.  *  *  *  the expenses of taking depositions  *  *  * the legal fees paid stenographers for per diem or for copies  *  *  *  the reasonable expenses of making transcript for the supreme court  *  *  *."

The cost of taking plaintiff's deposition, made for the convenience of defendant's counsel, must be borne by the defendant. It cannot be included in his bill of costs because that deposition was obviously a discovery deposition for defendant's benefit. The deposition was never filed with the district court and plaintiff's counsel did not have any practical means of securing a copy.

In Electronic Specialty Co. v. International Controls Corp., 47 F.R.D. 158, 162 (S.D.N.Y.1969), the court said:

"*  *  *  costs incurred for depositions which are merely fishing expeditions and only for the convenience of counsel in marshaling his case  *  *  *  are not allowable."

Other federal decisions in this area are consistent with our ruling here. Bowman v. West Disinfecting Co., 25 F.R.D. 280 (E.D.N.Y.1960); Emerson v. National Cylinder Gas Co., D.C., 147 F.Supp. 543.

In Ryan v. Arabian American Oil Company, 18 F.R.D. 206, 207 (S.D.N.Y.1955), it was held that the prevailing party:

"* * * is not entitled to the $50 he paid for a copy of his deposition taken by defendant. A copy of the deposition was on file in the office of the clerk of this court. Accordingly plaintiff obtained a copy of the deposition for his own convenience and not because it was necessary for use in the case."

See also Oscar Gruss & Son v. Lumbermens Mutual Casualty Co., 46 F.R.D. 635, 641 (S.D.N.Y.1969); Fliescher v. A. A. P. Inc., 36 F.R.D. 31, 37 (S.D.N.Y.1964); Curacao Trading Co. v. Federal Ins. Co., 3 F.R.D. 261, 262 (S.D.N.Y.1942).

Therefore, the judgment of the district court is affirmed, except that the cost bill is hereby ordered reduced to $15.00.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, CASTLES, and HASWELL, concur.