No. 12569

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

ORVIS G. LOVELY AND DONALD R. LAUBACH,

        Plaintiff and Respondent and
        Cross-Appellant,

-vs-

BURROUGHS CORPORATION, a corporation,

        Defendant and Appellant.

---

Appeal from:  District Court of the Sixth Judicial District,
           Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellant:

        Landoe, Gary and White, Bozeman, Montana
        H. B. Landoe appeared, Bozeman, Montana
        Henson and Tully, Minneapolis, Minnesota
        Robert Henson argued, Minneapolis, Minnesota

    For Respondent:

        Conrad B. Fredricks argued, and Richard W. Josephson
        argued, Big Timber, Montana

---

              Submitted:  June 13, 1974

              Decided: OCT 21 1974

Filed:  OCT 21 1974

_Thomas J. Kearney_
                      Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

In a nonjury trial in the district court of Park County, plaintiffs were awarded damages in the amount of $16,760.82 for losses resulting from the defective operation of electronic accounting equipment supplied by the defendant. Defendant appeals from the judgment. Plaintiffs cross-appeal from the damages awarded.

The issues raised by the defendant on appeal are: 1) Liability for breach of express or implied warranty; 2) Measure of damages; 3) Assessment of costs. Plaintiffs' cross-appeal concerns only the measure of damages.

Given the complex nature of the facts and issues involved, a detailed consideration of both is required.

Plaintiff Orvis Lovely commenced an accounting practice in Livingston, Montana, in 1953. In 1964 he formed a partnership with the other plaintiff, Donald Laubach. In 1966, the partnership purchased an additional practice in nearby Big Timber, Montana, and maintained an office there. The addition of this practice increased the workload of the partnership to the point where additional help had to be hired or the work had to be automated.

Plaintiffs were approached by David Larsen, as sales representative of the defendant, concerning the use of Burroughs equipment in their expanded practice. A series of meetings, correspondence and demonstrations of available equipment ensued, resulting in a purchase order for a small Burroughs computer. That order was superseded in February, 1967 by a similar order for a larger, more expensive computer. The second order bore a hand-

written notation that it was to be converted into a lease prior to delivery.

Although the computer was delivered and installed in June, 1967, no formal lease was ever executed. Plaintiffs submitted an application and a check, through Larsen, for consideration by a third-party leasing firm in November of 1967. Plaintiffs forwarded a second check in December in the same amount to Burroughs before learning that the application had been denied. Defendant then offered to lease directly to plaintiffs at a higher monthly rental. Plaintiffs' rejection of this offer prompted the removal of the computer in February of 1968.

The district Court found that defendant, at the time of the order, knew the particular purposes for which the equipment was required and that plaintiffs were relying on defendant's judgment in furnishing suitable goods. It further found that the equipment delivered was not fit for the purposes intended, and that plaintiffs were damaged thereby.

These findings of fact are amply supported by the record. During the course of plaintiffs' negotiations with Larsen, the latter became thoroughly familiar with the operations of their accounting practice. Plaintiffs testified that they relied heavily on Larsen's assessment of the computer's suitability for their particular needs. That reliance prompted plaintiffs to solicit additional business from their customers which was to be provided by the expanded capabilities of the new machine.

Following installation and debugging of the machine, a number of customer accounts were transferred to the automated

-3-

puter while the defendant had the expectation of profit from a lease directly with the plaintiffs or a sale to the third-party leasing company. Defendant further benefitted by the receipt of the two checks as well as the sale of forms to be used with the computer. To argue that defendant gratuitously placed a $38,000 computer at the disposal of the plaintiffs without expectation of profit does not square with the facts.

Bailments for mutual benefit fall within the scope of section 42-101, R.C.M. 1947, which provides:

> "Hiring is a contract by which/gives to an-
> other the temporary possession and use of property,
> other than money, for reward, and the latter agrees
> to return the same to the former at a future time."
> [Emphasis supplied]

(with "one" handwritten above "which/")

The Legislature, by the use of the word "reward", obviously contemplated benefits other than money as being included in a hiring. We find no sound reason for excluding anticipated rewards from the scope of the statute.

Section 42-211, R.C.M. provides:

> "One who lets personal property must deliver
> it to the hirer, secure his quiet enjoyment thereof
> against all lawful claimants, put it into a condition
> fit for the purpose for which he lets it, and repair
> all deteriorations thereof not occasioned by the fault
> of the hirer and not the natural result of its use."
> [Emphasis supplied]

This statute expresses the common law of bailments requiring fitness for use in bailments for mutual benefit. Atlantic Tug & Equip. Co. v. S. & L. Paving Corp., 334 N.Y.S 2d 532, 8 Am. Jur.2d Bailments §144. When a bailor has reason to know the use for which the property is required, there arises an implied warranty of fitness for that use--particularly when the bailee re-

-5-

process. Within a short time, problems arose in the operation of the computer, requiring numerous visits by Burroughs' repairmen. These difficulties occurred as frequently as daily and often necessitated shutting the computer down until the repairs could be made. The problems experienced adversely affected the plaintiffs' ability to promptly and accurately service their customers' accounts. The damage to the reputation of the firm was one of the factors which led to the sale of the practice.

Given this evidence, the district court concluded that defendant had breached both express and implied warranties of fitness for intended use. It further concluded that this breach was the proximate cause of the damages which we shall deal with later.

Defendant argues that there was no transactional basis for any warranty; that breach of warranty, if such warranty existed, was not established by the record; and that if there was a breach of warranty, the plaintiffs waived their claim for relief.

Defendant maintains that the transaction here amounted to nothing more than a gratuitous bailment, giving rise to no express or implied warranty of fitness for intended use. We disagree.

At the very least, a bailment for mutual benefit arose as both parties received the benefits of the transaction. Global Tank Trailer Sales v. Textilana-Nease, Inc., 209 Kan. 314, 496 P.2d 1292; Miller v. Hand Ford Sales, Inc., 216 Or. 567, 340 P.2d 181; 8 C.J.S. Bailments §8(a). Plaintiffs had the use of the com-

-4-

lies upon the bailor's expertise as to the suitability of that property for that use.

Accordingly, defendant's delivery of the computer created a bailment for mutual benefit, and that relationship gave rise to an implied warranty of fitness for use in plaintiffs' practice. The district court found, and the evidence clearly shows, that that warranty was breached. From the time of installation to the time of removal, the computer suffered malfunctions which made it incapable of providing timely and accurate information. Defendant's protestations that a complex piece of equipment such as this is expected to have such problems are not persuasive. While the problems might be normal for this machine, and we are not convinced of that, defendant should have then known that the computer would never be suitable for plaintiffs' needs. His representations to the contrary would then be fraudulent.

Defendant further suggests that plaintiffs waived their claim of breach of warranty by failing to reject the computer during the approximately eight months after delivery. We cannot agree. Even if the defense of waiver had been timely raised, in accordance with Rule 8(c), M.R.Civ.P., the evidence does not conform to the theory. While the plaintiffs did retain possession for almost eight months, the evidence clearly shows that they did not accept the computer in its defective condition. The record is replete with repeated complaints made by the plaintiffs, resulting in numerous service calls directed at remedying the many problems. Plaintiffs' actions amount to a good faith

attempt to permit defendant to remedy the defects, not an acceptance of them. We therefore find no waiver of the protection of warranties of fitness for intended use. For simililar holdings see: Ekco Products Company v. United States, 312 F.2d 768 (U.S.Ct.Cl. 1963); KLPR TV, Inc. v. Visual Electronics Corporation, 327 F.Supp. 315,465 F.2d 1382 (8th Cir. 1972); Carlo Bianchi & Co. v. Builders' Equipment & Supply Co., 347 Mass. 636, 199 N.E.2d 519.

The district court awarded damages in the following amounts:

1)  $4,000 for time spent attempting to make the computer work and time spent correcting the mistakes made by the computer--time which otherwise could have been billed to clients.

2)  $1,302.37 for hiring additional help required by the computer problems.

3)  $3,000 in wages for hiring another accountant to conduct the Big Timber practice since the computer demanded plaintiffs' time in Livingston.

4)  $139.40 for costs of preparing a room for installation of the computer; $1,596 which was the amount of the two checks which plaintiffs sent to defendant during lease negotiations; $64.05 for telephone charges expended in informing defendant's repairmen that the computer was malfunctioning.

5)  $3,391 for loss sustained on the sale of the Big Timber business.

6)  $3,268 for loss sustained on the sale of the Livingston business.

Apart from the challenge to the finding of any liability here, defendant further contends that: 1) There is insufficient evidence to support the award of numbers 5 and 6; 2) Items 1, 3 and 6 are duplicative and therefore excessive; 3) A contractual provision limiting damages should have been applied; and 4) The value of the use of the computer should have been offset against any damages awarded. Plaintiffs cross-appeal, alleging that 1 and 6 should have been larger awards.

Damages may properly be awarded when they serve to compensate the plaintiff for detriment proximately caused by the defendant. Section 17-301, R.C.M. 1947. Before an award can be made, the damages must be clearly ascertainable in both their nature and origin. Section 17-302, R.C.M. 1947. Damages which are a matter of mere speculation cannot be the basis of recovery. Laas v. Mont. Hwy.Comm'n, 157 Mont. 121, 483 P.2d 699; Cruse v. Clawson, 137 Mont. 439, 352 P.2d 989; Jurec v. Raznik, 104 Mont. 45, 64 P.2d 1076.

Plaintiffs purchased the Big Timber practice in 1966 for $25,000 and sold it in May of 1968 for $21,609. The district court awarded the difference (Number 5) as damages. The record shows that the Big Timber practice suffered when the errant computer demanded time which would otherwise have been spent there attending to business. The measure of damages applied by the district court is sufficiently defined to avoid a charge of being too speculative. Since the cause, origin and nature of the damages is clear, we will not disturb that judgment.

The Livingston practice was fifteen years old when sold

in 1968 for $18,750. The district court awarded $3,268 as damages for loss on that sale (Number 6 above). That figure lacks both the certainty of origin and the factual basis which might allow us to affirm it. It appears that the district court arrived at this figure by subtracting the actual gross income of the Livingston practice in 1967 from a projected gross income figure for 1967 which an expert testified would have been the practice's gross income had it not had the computer problems. While a court can properly award damages for a loss of net profits, it cannot award damages for a loss of anticipated gross income. Klemens & Son v. Reber Plbg. & Htg. Co., 139 Mont. 115, 360 P.2d 1005; 22 Am.Jr.2d Damages §178.

Furthermore, it is difficult to determine why the district court looked at these figures in determining the loss on the sale of the Livingston practice. [See Finding of Fact No. 13] The record contains voluminous expert testimony concerning methods of placing a valuation on plaintiff's practice at the time of sale. Without the benefit of further explanation of the computations used by the trial court, and since the award is challenged by both parties, a redetermination of number 6 is necessary.

Since the expert who testified concerning the appropriate valuation of the business included a number of variables in his basic formula of a certain percentage of gross income, we cannot compute damages based upon the record without making certain determinations of fact. These are properly the functions of the trial court, and we therefore must remand for further consideration of this element of damage.

-9-

Defendant further protests that the damages awarded as numbers 1, 3 and 6 above overlap and encompass but a single detriment to the plaintiffs. Since number 6 involves the loss on the _sale_ of the Livingston practice, we find no overlap between it and the other items. On their face, however, we can see the possibility of overlap between items 1 and 3. Since the time spent in correcting computer errors is time which plaintiffs might otherwise have spent performing services for clients, it is logical that the cost of hiring another to service those clients would relieve plaintiffs of some of the damages of lost time. Without more, it would appear that the cost of hiring the additional accountant and the loss of billable time would be to some extent duplicative. However, the award for loss of billable time represents a substantial reduction in the amount of damages claimed by plaintiffs for that item. In fact, plaintiffs protest that reduction on cross-appeal.

The reduced award was apparently the result of the district court's adjustment of the claimed figure to take into account the overlap mentioned above. On this record, that adjustment was reasonable and will not be disturbed by this court.

Defendant also calls attention to the disclaimer of liability for consequential damages contained in the purchase agreement here. The very language of the waiver belies its applicability here. It reads:

"* * * Seller shall not be liable for damage caused

by delay in delivery which is unavoidable or beyond Seller's reasonable control nor in any event for consequential damages."

The provision clearly speaks to consequential damages arising from delay in delivery, which is not involved here. In addition, the language appears in a document which purports to be a purchase agreement, yet the parties agree that no purchase was intended. The language of that mere order cannot be considered governing during the period of bailment. Finally, the waiver suffers the same infirmity as the "fine print waiver" invalidated in Quality Acceptance Corp. v. Million and Albers, Inc., 367 F.Supp. 771 (D. Wyoming 1973), and many similar cases.

As to the question of offsetting the value of the use of the computer against any damages awarded, it should be sufficient to note that no evidence of such value was introduced. Indeed, it is difficult to imagine how a computer which so damaged plaintiffs' practice would be said to have had value to them.

The final issue raised by the defendant concerns the costs of suit. Plaintiffs, on appeal, have admitted that our decision in Johnson v. Furgeson, 158 Mont. 170, 489 P.2d 1032, supports the defendant's contentions. We there held that costs of depositions taken for the convenience of the deposing party in marshalling his own case must be borne by that party. See also Davis v. Trobough, 139 Mont. 322, 363 P.2d 727; Isman v. Altenbrand, 42 Mont. 188, 111 P. 849. The remainder of defendant's objections to the costs are equally well taken as not

being included within the provisions of section 93-8618, R.C.M. 1947.

It follows that the judgment of the district court must be affirmed in part and reversed in part. The judgment is sound with the exception of that element of damages dealing with the Livingston practice loss, and the assessment of costs. We must therefore remand for a redetermination of the amount of damages arising from the loss on the sale of the Livingston business. Judgment should be then entered reflecting that amount, and costs should be awarded in an amount consistent with this opinion.

_____
                    Justice

We concur:

_____

_____

_____
                    Justices

_____
Hon. Alfred B. Coate, District Judge,
sitting in place of Mr. Chief Justice
James T. Harrison.