McRoberts Protective Agency, Inc., Appellant-Respondent, v Lansdell Protective Agency, Inc., et al., Respondents-Appellants, et al., Defendants.

First Department, April 4, 1978

### APPEARANCES OF COUNSEL

*Leo Kayser, III,* of counsel; *Susan A. Powers* with him on the brief *(Norwick, Raggio, Jaffe & Kayser,* attorneys), for appellant-respondent.

*Arthur Karger* of counsel *(Frank Marcellino* and *Michael L. Martell* with him on the brief; *Abberley Kooiman Marcellino & Clay,* attorneys), for respondents-appellants.

### OPINION OF THE COURT

FEIN, J.

This action seeks recovery upon allegations of unfair competition, business defamation, and tortious interference with plaintiff's contracts with its customers and accounts by defendants Frank McRoberts (Frank), Donald Carey (Carey) and Alan Walters (Walters), former officers or employees of plaintiff, who withdrew to form or join Lansdell Protective Agency (Lansdell). Frank resigned his position as president, director and chief operating officer of plaintiff, McRoberts Protective Agency (McRoberts) on April 4, 1969, after 22 years with plaintiff, to create Lansdell in direct competition with plaintiff in the licensed watch, guard and patrol agency business at airports, docks and warehouses. It is undisputed that the misconduct complained of was not shown to have occurred prior to Frank's resignation on April 4, 1969. However, the record firmly supports the detailed and extensive findings by the trial court that Frank, upon his resignation, joined by the other defendants, actively set out to divert plaintiff's customers and accounts by soliciting employees to withdraw and to

join Lansdell through representations that plaintiff was losing accounts and would be going out of business, and by inducing customers to break their contracts with plaintiff and to contract with Lansdell, also through misrepresentations as to plaintiff's continued existence. As found by the Trial Judge, Carey and Walters were still employed by plaintiff when they agreed upon and began such activity in concert with Frank. Carey resigned from plaintiff on April 9, 1969. Walters resigned on April 11, 1969. They both joined Lansdell which was organized on April 10, 1969 and licensed on April 14, 1969 when it started business. As found by the trial court, the essence of the scheme was to undermine or destroy plaintiff's ability to service its customers by inducing plaintiff's supervisors and guards to join Lansdell on suggestions that they would lose their jobs when the customers switched their accounts and, at the same time, informing certain key customers that plaintiff's supervisors and guards were now working for Lansdell.

As a result of the conspiracy or plan to appropriate plaintiff's business the trial court found that 38 of plaintiff's customers, including its principal customers, had been wrongfully diverted to Lansdell, 17 during the first 30 days of Lansdell's existence. During the month of April, 1969, Lansdell hired 15 of the 36 supervisors who had previously been employees of plaintiff. In all, plaintiff lost 201 guards, of whom, 95% went to work for Lansdell. The Trial Judge also found that plaintiff's contract with Pan Am was breached by Pan Am as a result of an intentional interference with that contract by defendants Frank, Carey, Walters and Lansdell, which began while Carey and Walters were still employed by plaintiff. There was a similar finding with respect to the Atlantic Container Line contract. These findings were supported by the record and were part of a pattern of unfair competition.

Although the facts found do not fit within the pattern of *Duane Jones Co. v Burke* (306 NY 172) relied on by plaintiff, there are enough similarities to warrant a finding of liability on the theory of unfair competition. As in *Duane Jones,* Carey and Walters engaged in disloyal activity while still employed in significant supervisory capacities by plaintiff. They did so in conjunction with Frank and Lansdell although Frank was no longer an employee or officer of plaintiff. Frank instigated such activity knowing Carey and Walters were still so em-

ployed. This was part of his conceded plan to take away as much of plaintiff's business as he could and divert it to Lansdell. Although much of the course of conduct which diverted plaintiff's business to Lansdell occurred after Carey and Walters joined Lansdell and were no longer plaintiff's employees, their efforts began during their employment. Significantly the commitment by Pan Am preceded the termination of their employment as did the advice to other customers and to plaintiff's employees to transfer to Lansdell. The entire course of conduct amounted to unfair competition. As in *Duane Jones (supra)* defendants were aided in their efforts to divert the business by the knowledge acquired by them during their employment as to (1) the rates of pay of plaintiff's employees; (2) the terms and conditions of any agreements between plaintiff and its customers both as to rates and requirements; and (3) the requirements of plaintiff's customers.

■ Liability was properly fastened upon defendants by the Trial Judge on the basis of the evidence before him supporting his findings.

■ ■ However, there must be a new trial on the issue of damages only. The trial court awarded damages in the sum of $304,556.87, as the profits which plaintiff lost by defendants' wrongful diversion of its accounts. Recovery was limited to a one-year period. Plaintiff's loss was computed on the basis of a percentage of gross profits which would have been earned upon the gross business diverted to Lansdell. The appropriate measure of plaintiff's damage is "the amount of loss sustained by it, including opportunities for profit on the accounts diverted from it through defendants' conduct" *(Duane Jones Co. v Burke, supra,* p 192) or, stated differently, "the amount which the plaintiff would have made except for the defendant's wrong" *(Santa's Workshop v Sterling,* 2 AD2d 262, 267, affd 3 NY2d 757; see, also, *Bruno Co. v Friedberg,* 21 AD2d 336), not the profits or revenues actually received or earned by Lansdell. The trial court, however, erred in computing plaintiff's loss by fixing damages based upon plaintiff's estimated gross profits, rather than by measuring recovery upon plaintiff's estimated net profits *(Santa's Workshop v Sterling, supra),* and further erred in limiting recoverable damages to a one-year period. Accordingly, remand is necessary for a new trial, limited to the issue of damages, which shall be determined based upon the net profit lost by plaintiff on the

accounts diverted to Lansdell for a reasonable period of time, i.e., the net amount which plaintiff would have earned on the diverted accounts, for a reasonable period of time, not the profit or revenue received or earned by Lansdell.

Accordingly, the judgment, Supreme Court, New York County (WALLACH, J.), entered June 20, 1977, after a nonjury trial, against defendants Lansdell Protective Agency, Inc., Frank C. McRoberts, Donald Carey and Alan Walters, should be modified on the law, only to the extent of remanding the case for a new trial solely on the issue of damages and otherwise affirmed, with costs to plaintiff.

BIRNS, J. P., EVANS, LANE and SULLIVAN, JJ., concur.

Judgment, Supreme Court, New York County, entered on June 20, 1977, unanimously modified, on the law, only to the extent of remanding the case for a new trial solely on the issue of damages, and otherwise affirmed. Plaintiff-appellant-respondent shall recover of defendants-respondents-appellants $60 costs and disbursements of this appeal.