No. 14757

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

MORRISON-MAIERLE, INC.,
a corporation,

                      Plaintiff and Respondent,

      vs.

SELSCO, a Utah Corporation,
qualified to do business in
Montana,

                    Defendant and Appellant.

---

Appeal from:  District Court of the Eighteenth Judicial District,
                Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

    For Appellant:

        G. Page Wellcome argued, Bozeman, Montana

    For Respondent:

        Berg, Angel, Morgan & Coil, Bozeman, Montana
        Gregory O. Morgan argued, Bozeman, Montana

---

                  Submitted:  November 1, 1979

                    Decided:  FEB 2 5 1980

Filed: FEB 2 5 1980

_Thomas J. Kearney_
                       Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant, Selsco Corporation, appeals from a judgment of the Gallatin County District Court foreclosing a mechanic's lien filed by the plaintiff, Morrison-Maierle, Inc., and denying defendant's counterclaim against the plaintiff for alleged negligence in relation to the planning and supervising of construction of defendant's campground.

The defendant raises two major issues in this appeal. Selsco first contends that the mechanic's lien does not accurately describe the attached property and thus cannot be enforced to satisfy its judgment. In relation to its counterclaim, Selsco asserts that the evidence presented at trial established as a matter of law that it was entitled to damages as a result of the plaintiff's failure to exercise care in planning and inspecting the project.

The defendant, Selsco, a Utah corporation, (referred to herein as the owner), contracted with Morrison-Maierle, Inc. a Helena engineering firm, (referred to as engineers), for the development of a project called West Yellowstone United Campgrounds. Pursuant to their agreement with the owner, the engineers developed a plan for facilities to accommodate 500 campers, and provided regular inspection of construction to assure that the construction was properly performed. All phases of the project were completed in July 1972.

Soon after the campground opened the owner experienced difficulties with the newly constructed facilities, and refused to complete payments to the engineer. The engineers filed suit on August 12, 1974, seeking payment of the amount still owed under the contract. The complaint sought collection of this debt by enforcement of a mechanic's lien on the campground improvements. The owner moved to dismiss the complaint alleging

-2-

that the mechanic's lien did not properly describe the property involved. Later, the owner filed a counterclaim against the engineers. This counterclaim was amended to allege additional defects in construction of the campground facilities allegedly caused by the engineer's negligence.

After a nonjury trial, the court granted judgment of $22,945 for the contractual debt, and $7,662.55 for costs and attorney fees. The court denied the owner's counterclaim and ordered the judgment to be satisfied by foreclosure and sale of campground property. The owner appeals this judgment.

The owner contends that the mechanic's lien should not be enforced because it is not in strict compliance with the code's requirement that the lien contain a correct description of the charged property. See section 71-3-511(1), MCA. The lien states that Selsco owns or holds the charged land when in fact, Selsco occupies the land under a special use permit issued by the United States government. We do not consider this to be fatal to the lien.

Nor does the lien description fail to adequately describe the property to which it attaches. Any error or mistake in the account or description does not affect the validity of the lien if the property can be identified by the description. Section 71-3-511(1), MCA. Here, the lien gave the correct legal description of the land on which the structures were located and identified the attached property together with "all improvements, structures and fixtures thereunto appertaining or affixed."

The purpose of the statutory requirements for filing a description of the attached property is simply to give notice of the existence of the lien to interested third parties. Cole v. Hunt (1949), 123 Mont. 256, 211 P.2d 417. This purpose is not frustrated here where it is not argued that the attached

-3-

improvements can be confused with any other structures in the area. Furthermore, the lien description is made even more specific by the accounts filed with the lien which state that the engineers' bill is for "engineering services on United Campground, West Yellowstone, Montana." A person reading the lien should readily conclude that the lien attaches to the campground facilities. See Varco-Pruden v. Nelson (1979), ___ Mont. _____, 593 P.2d 48, 36 St.Rep. 704. We conclude therefore that the lien documents taken as a whole adequately describe the property to which the lien attaches.

In its appeal from the trial court's denial of its counterclaim, the essence of the owner's contentions is that the trial court had a duty, as a matter of law, to find that the engineers breached their contractual duties and that the owners were injured by this negligence in design and inspection. We determine however, that there was substantial credible evidence upon which the trial court could deny the counterclaim. The thrust of the argument by the owner is that the trial court should have believed its own expert testimony rather than the expert testimony from the engineers.

The counterclaim alleged that the engineers failed to design and inspect the project in a workmanlike manner, and that the breach of this duty caused defects in four items for which it seeks damages: the sewage lagoon (estimated damage ($43,240); valve boxes (estimated damages $4,729); water lines (estimated damages $2,943); and loop roads (estimated damage $2,000).

At trial, the owners attempted to prove by expert testimony that the engineers had a duty of care to test the permeability of the lagoon's clay surface before its certification. The engineers countered this evidence with the testimony of their chief engineer who stated that cracking in the lagoon's surface was caused by insufficient flow from campground units during the period of 1973 to 1977 when the occupancy rate of the

-4-

campground was roughly 13 percent of its designed capacity. We note in this regard, that it was in 1977 when the campground owners first attempted to fill the lagoon with water and then discovered that the cracks in the clay liner prevented the lagoon from filling. The trial court was not bound by testimony of either expert, and it had the right to give greater weight to the engineer's testimony. See Erickson v. Perrett (1977), _____ Mont._____, 572 P.2d 518; Robertson v. Valhi, Inc. (La.App. 1977), 345 So.2d 149; 32 C.J.S. Evidence §572(1), at 669.

Two of the remaining defects alleged in the owner's counter-claim, occurred as a result of time constraints placed on the engineers. Water valves installed in the campground began to leak and did not meet the specifications of the engineers' plans. However, it is not disputed that the specified water valves were unavailable at the time the project neared completion, and the engineer to complete the project on schedule, purchased the best available substitute.

The owner claims that cracking in the campground's loop roads was caused by the engineers' negligence, but uncontradicted testimony established that placing a permanent surface on the road would have delayed the scheduled opening of the campground. The parties did not decide upon a temporary surface until the owners had been fully informed that settling would likely occur in a temporary surface.

The last contention concerning the counterclaim is that the engineers failed to lay the water lines according to design specifications and therefore that the water lines did not drain properly. The owners argue that a reasonable inspection of the bedding of the water lines would have prevented the defect from occurring.

The record indicates, however, that during the major portion of construction the engineers made almost continuous inspections

-5-

and they forwarded daily progress reports to the owner. West Yellowstone United Campgrounds was a very large project and it is predictable that some faulty workmanship would go undetected by even careful inspection. An engineer is not an insurer of a project against defects nor does he guarantee that he will complete it to perfection. He is required to exercise the care and competence expected of a member of his profession. Bloomsburg Mills, Inc. v. Sordoni Construction Company (1960), 164 A.2d 201, 401 Pa. 358; Gagne v. Bertran (1954), 43 Cal.2d 481, 275 P.2d 15, 21; 6 C.J.S. Architects §27, at 491-92. The trial court heard the evidence and determined that the engineers exercised reasonable care. There was sufficient evidence to conclude that the engineers had not breached their duty of care.

The remaining issue concerns the cost bill. The owner contends that certain deposition expenses and a partial transcript of trial are not properly chargeable as costs or expenses of litigation.

The engineers included two depositions as part of their costs. Both witnesses later appeared and testified at trial. The engineers admit, however, that one of the depositions should not have been charged as costs, but contend that the costs of taking witness Wetstein's deposition should be awarded to them, because they furnished a copy of the deposition to the owner who used it as evidence at trial. Since it was so used, we conclude that it was properly part of the costs of the action. The distinction is that if a deposition is taken solely for a party's own convenience, he cannot properly charge it to the other party as part of the costs. Lovely v. Burroughs Corp. (1974), 165 Mont. 209, 527 P.2d 557, appeal after remand 169 Mont. 454, 548 P.2d 610; Johnson v. Furgeson, Et Al. (1971), 158 Mont. 170, 489 P.2d 1032. Here the copy

-6-

was furnished to the owner at the engineers' expenses, and used by the owner at trial.  It has no ground to complain.

We hold, however, that the engineers could not properly order a partial transcript of the trial for use at the trial and charge it to the owner as part of the costs. It was not, under section 25-10-201, MCA, a reasonable and necessary expense.

With the exception of the Wetstein deposition which should be excluded as an item of costs, the judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-