S.A.B. ENTERPRISES, INC., Doing Business as BRADY'S LAUNDRY AND DRY CLEANING, Respondent, v VILLAGE OF ATHENS, Appellant.

Third Department, January 10, 1991

## APPEARANCES OF COUNSEL

*Karl H. Schrade (Donna B. Heinrichs* of counsel), and *Feit & Schlender (Ellen C. Brotman* of counsel), for appellant.

*Deily, Testa & Dautel (Susan S. Dautel* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

In 1967, three brothers, Seymour, Alvin and Bertram Kadan, formed plaintiff, S.A.B. Enterprises, Inc., for the purpose of acquiring the assets and business of Brady's Laundry and Dry Cleaning, a home laundry located in the Village of Athens, Greene County. Their family acquired a similar home laundry in Columbia County in 1963. Following the acquisition of Brady's, plaintiff expended substantial sums in replacing equipment and substituting larger and more automated washers and ironers to convert Brady's from a home laundry to a large-volume commercial linen laundry and linen supply operation for serving resort hotels and motels in the Catskill Mountains region. Plaintiff's principal witness, Bertram Kadan, testified that by 1972 the laundry had been successful in acquiring as customers many of the major resorts in the area. During the peak summer season, the laundry was then using up to 30,000 gallons of water daily, which was obtained from the municipal water lines of defendant and paid for on a metered basis.

In July 1972, plaintiff first found that the water supply from defendant was often badly discolored and was permanently staining the fabrics during laundering. Repeated complaints to officials of defendant were responded to by recommendations to flush the lines before using the water. When this was unavailing, plaintiff brought in as consultants a local college

professor of chemistry and a sanitation engineer with exper-
tise in water treatment systems. Their evidence was that the
staining was caused by live and dead microscopic animal and
vegetable matter suspended in the water, attributable to the
condition of the nearby lake which was defendant's sole water
source. Defendant's filtration system had been inoperable for
several years. The problem was further aggravated by the way
defendant stored water from the lake. Defendant had applied
for a Federal grant to finance the installation of a new
filtration system, averring that the existing water supply
failed to meet State Health Department bacteriological, physi-
cal and chemical standards. The application was still pending
during the pertinent period. Bertram Kadan testified, how-
ever, that defendant rejected plaintiff's offer to repair the
existing filtration system at plaintiff's expense because of its
fear that repair of the existing system might prejudice its
application for funding to construct a new one. The evidence
also was that plaintiff was advised by one of its consultants to
install its own filtration system, at an estimated cost of
$96,000, but was unable to obtain the financing necessary to
pay for the project.

In the fall of 1973, plaintiff commenced this action against
defendant for its expense of relaundering and replacing per-
manently stained linens and loss of business from displeased
customers, asserting causes of action for negligence and
breach of implied warranty of fitness of defendant's water
supply (see, UCC 2-1315). In November 1973, plaintiff closed its
doors, claiming to have lost its entire clientele from dissatis-
faction with the stained linens.

This case was first tried in 1981, ending in a mistrial on the
court's own motion for a lack of time at the end of the trial
term to complete the proof. A second trial in 1982 ended when
Supreme Court dismissed the action after ruling that plain-
tiff's use of defendant's water supply once it had discovered
the impurities in July 1972 was contributory negligence as a
matter of law. This court reversed, holding that an issue of
fact was presented as to whether continued use of the water
after such discovery, under plaintiff's circumstances, consti-
tuted contributory negligence (see, S.A.B. Enters. v Village of
Athens, 94 AD2d 915, appeal dismissed 60 NY2d 860). A third
trial, in 1987, ended in a mistrial due to the sudden onset of
illness of plaintiff's then-counsel. Finally, upon this, the fourth
trial of the action, the proof was completed and submitted to
the jury. The jury found in plaintiff's favor on both its negli-

gence and breach of warranty causes of action. It awarded plaintiff $975,000 for loss of business and $25,000 for replacing damaged linens. Judgment was entered for $1,860,423.65, which included over $800,000 in interest on the loss of business damages award from November 30, 1975, the approximate date when plaintiff ceased operations. This appeal by defendant followed.

■ At the outset, we decline to consider the claim asserted on appeal by defendant's special counsel that defendant was performing a governmental function in supplying water to plaintiff and, hence, was immune from tort liability in the absence of proof of a special relationship between it and plaintiff. Defendant clearly permitted the case to be tried and submitted to the jury on the basis that the traditional rule still applied, i.e., that a municipality, in supplying water through lines to local consumers for a volume-based fee, is exercising a proprietary function for which it may be subject to liability in tort *(see, Canavan v City of Mechanicville,* 229 NY 473). Accordingly, defendant failed to preserve this issue for appeal *(see, Miller v Miller,* 68 NY2d 871, 873; *De Leon v New York City Tr. Auth.,* 50 NY2d 176, 179, n 1; *Matter of State of New York v Avco Fin. Serv.,* 50 NY2d 383, 390-391). The distinction between governmental/proprietary functions has become blurred and has been eliminated in some contexts *(see, Matter of County of Monroe [City of Rochester],* 72 NY2d 338; *County of Nassau v South Farmingdale Water Dist.,* 46 NY2d 794), but not as yet regarding municipal tort liability. On the state of this record, we should not reach the issue of abandonment of the distinction in the tort field by exercising our discretion to review in the interest of justice.

■ Defendant appears to have conceded on this appeal the sufficiency of the evidence of its negligence. However, defendant contends that the proof failed to establish that any negligence on its part was a proximate cause of plaintiff's loss of business and that the case should not have been submitted to the jury on the basis of purely circumstantial evidence of causation. We disagree. The jury's specific finding of proximate cause should be upheld unless " 'there is simply no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by the jury on the basis of the evidence presented at trial' " *(Dominguez v Manhattan & Bronx Surface Tr. Operating Auth.,* 46 NY2d 528, 532, quoting *Cohen v Hallmark Cards,* 45 NY2d 493, 499). There was direct evidence from testimony and

photographs that the foreign matter in defendant's water caused unsightly, irradicable staining of items such as sheets and towels laundered by plaintiff and that, in the high-speed automated pressing and folding process, it was not unusual for stained articles to pass through plaintiff's screening and be delivered to customers. Bertram Kadan also testified as to stained articles being returned "many times" by customers who eventually terminated their accounts with plaintiff. This evidence certainly supports a rational inference that the stain-producing impurities in the water caused plaintiff's loss of business *(see, Dominguez v Manhattan & Bronx Surface Tr. Operating Auth., supra)*. Moreover, to the extent that the foregoing proof was circumstantial rather than direct evidence of a causal relationship, there was no evidence of any other reason for plaintiff's loss of accounts. Thus, there was no other *reasonable* hypothesis established in the record which plaintiff had the burden of excluding before the issue was properly submitted to the jury *(cf., Nieskes & Craig v Schoonerman,* 40 AD2d 931, 932).

■ It follows from the foregoing that the jury's verdict holding defendant liable on plaintiff's negligence cause of action should be upheld. This renders academic defendant's challenge to the jury's award on plaintiff's breach of warranty cause of action unless the imposition of the substantial pre-judgment interest on the loss of business damages award could only have been made for the breach of warranty, and not on the award in plaintiff's negligence cause of action. We have concluded that the better and prevailing weight of authority supports recovery of prejudgment interest for a tortious injury to plaintiff's business, as "an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property" (CPLR 5001 [a]; *see, Della Pietra v State of New York,* 125 AD2d 936, 938, *affd* 71 NY2d 792; *Phelps v A. R. Gundry, Inc.,* 23 AD2d 960, 961; *cf., Brandt Corp. v Warren Automatic Controls Corp.,* 37 AD2d 563). Since plaintiff can thus properly obtain recovery of prejudgment interest on the jury's award of damages in its negligence cause of action, it is unnecessary for us to review the validity of its recovery for breach of warranty.

■ Defendant's remaining arguments are directed at overturning the jury's award of damages in the amount of $975,000 for plaintiff's loss of business. We find unpersuasive defendant's first argument that damages should not have been awarded because plaintiff made no attempt to mitigate its

business loss by taking steps to safeguard its water supply after discovering the impurities and their effect on its products. Viewing the evidence on this issue, as we must, in a light most favorable to plaintiff as the successful party *(see, Matter of Kornblum Metals Co. v Intsel Corp.,* 38 NY2d 376, 379), it has to be assumed that the jury accepted the testimony of plaintiff's expert that the minimum cost for plaintiff to have installed an effective filtration system of its own was $96,000 and the testimony of Bertram Kadan that plaintiff made a reasonable effort to obtain a bank loan to finance the project but was unsuccessful. By the same token, it must be assumed that the jury rejected the testimony of defendant's experts regarding other available filtration systems at a fraction of the cost of $96,000, or that the jury concluded that plaintiff neither knew nor should have known of these less expensive measures.

There is more substance to defendant's alternative contention that the jury's award for loss of business damages was excessive and based largely on speculative evidence. Since plaintiff's claim was that defendant's tortious acts totally destroyed its laundry business, the appropriate measure of that element of damages here was the fair market value of the business before destruction *(see, National Apparel Adj. Council v Dun & Bradstreet,* 42 AD2d 58, 60, *lv denied* 33 NY2d 518; *Jim's Hot Shot Serv. v Continental W. Ins. Co.,* 353 NW2d 279 [ND]; *Sawyer v Fitts,* 630 SW2d 872 [Tex]; 22 Am Jur 2d, Damages, § 640, at 703). Plaintiff's entire proof of the value of its destroyed business consisted of the testimony of Bertram Kadan. No documentary evidence on the value of the business, such as profit and loss statements, books and records or income tax returns, was introduced. Kadan testified that all such records were stored at the laundry premises after it was shut down and that the records were then lost or destroyed in 1977 when defendant razed the building. Kadan's testimony was that there are two methods used in the industry for determining the value of a *commercial* laundry or of a particular linen wash or linen supply account. The method he emphasized and described in detail was to take two thirds of annual gross receipts and multiply the result by a factor of 3, 4 or 5, depending on various other factors. Kadan rejected consideration of net profits or losses for making such evaluation. At one or more points, he testified that plaintiff lost aggregate yearly gross receipts from its customers of $491,750. It seems evident that the jury relied on this evidence in fixing

its award for plaintiff's loss of business in the sum of $975,000, which closely approximates the result of using the valuation method Kadan suggested with a factor of three.

In our view, the foregoing award was excessive and largely based on proof lacking a proper foundation. This State does follow the general rule that an owner of property, with a modicum of qualifying experience, may offer a lay opinion as to its value *(see, Fassett v Fassett,* 101 AD2d 604, 605; *Irv-Bob Formal Wear v Public Serv. Mut. Ins. Co.,* 81 Misc 2d 422, 429, *affd* 86 Misc 2d 1006; *see also, Park W. Mgt. Corp. v Mitchell,* 47 NY2d 316, 329-330, *cert denied* 444 US 992; Fisch, New York Evidence § 372, at 255-256 [2d ed]). But "an owner's opinion of value is insufficient to support a value determination by the factfinder if it is given without a valid basis or is based upon improper facts or analysis" *(Jim's Hot Shot Serv. v Continental W. Ins. Co., supra,* at 282).

There were serious weaknesses in Kadan's testimony on value. As previously noted, it was based on a claimed industrywide method of appraising commercial laundries. The only experience with the use of this industry standard he described was in connection with the family's purchase of the laundry in Columbia County in 1963 and the instant laundry in Greene County in 1967, plus vague references to unsuccessful negotiations to purchase three other laundries. However, Kadan also described the two laundries actually purchased by the family as *home* laundries at the time of acquisition, not *commercial* laundries for the value of which there was an alleged industrywide formula.

A second problem with the proof of business loss damages is that Kadan's method of evaluating plaintiff's business was based entirely on a factor of gross receipts, in effect capitalizing the gross receipts of the business enterprise to arrive at its worth, without proof of the extent of profits plaintiff earned on its gross revenues. The courts have generally rejected the use of gross receipts or gross profits as a means of establishing the value of a loss or injury to business interests *(see, McRoberts Protective Agency v Lansdell Protective Agency,* 61 AD2d 652, 655; *Jim's Hot Shot Serv. v Continental W. Ins. Co.,* 353 NW2d 279, *supra; Mangham v Hall,* 564 SW2d 465 [Tex]; *Lovely v Burroughs Corp.,* 165 Mont 209, 527 P2d 557). While Kadan did opine that the worth of a commercial-type laundry business could be determined completely on the basis of gross receipts without reference to net profits or losses, it is noteworthy that he described his own role in establishing the

worth of the laundries he and his family acquired in Columbia County and Greene County as consisting of "[r]eviewing the books, profit and loss statements, income taxes, the type of business that was being operated".

Lastly on damages, it is quite unclear from Kadan's testimony as a whole whether the laundry's gross receipts of $491,750, upon which his method of evaluation was totally based, represented his estimate of *annual* revenues, or instead, the aggregate revenues for the entire period from when the staining from the impurities in the water started in July 1972 to the final closing of the laundry in November 1975. Kadan testified both ways on an equal number of occasions. His last testimony on the subject was as follows:

"Q. Is it correct to state the 491,750 represents the total gross business that you estimate Brady's Laundry did from July of 1972 through November of 1975?

"A. Yes, I believe so."

Based upon the foregoing, we have concluded that the jury's award of $975,000 for plaintiff's loss of business was excessive and cannot stand. Accordingly, the judgment must be reversed and a new trial ordered on the sole issue of damages.

MAHONEY, P. J., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Amended judgment reversed, on the law, without costs, and matter remitted to the Supreme Court for a new trial on the issue of damages only.