■ S.A.B. ENTERPRISES, INC., Doing Business as BRADY'S LAUNDRY AND DRY CLEANING, Appellant-Respondent, v VILLAGE OF ATHENS, Respondent-Appellant. [599 NYS2d 746] —Mahoney, J. (1) Cross appeals from a judgment of the Supreme Court (Connor, J.), entered April 17, 1992 in Greene County, upon a verdict rendered in favor of plaintiff, and (2) appeal from an order of said court, entered October 7, 1992 in Greene County, which denied defendant's motion to set aside the verdict.

The relevant facts of this case, which has been in the court system since 1973, are recited in detail in our prior decisions (164 AD2d 558; 94 AD2d 915). Briefly, based upon allegations that the municipal water supply from defendant used in plaintiff's commercial laundry and linen supply business contained contaminants that permanently stained the fabrics during laundering, plaintiff commenced the instant action in 1973 seeking recovery for its expense of relaundering and replacing permanently stained linens and for loss of its entire business due to customer dissatisfaction.

Following the *fourth* trial, the jury found in plaintiff's favor and awarded it $975,000 for loss of business and $25,000 for replacing damaged linens. Upon appeal, we reversed, concluding that while the appropriate damages standard was the fair market value of the business at the time, the $975,000 award was excessive and largely based upon proof lacking a proper foundation.* Accordingly, a new trial was ordered on the issue of damages.

---

* In particular, we took issue with the evidentiary support for the valuation figure proffered by plaintiff, a figure based not upon profit and loss statements, books and records or tax returns but solely upon the opinion of one of plaintiff's principals, Bertram Kadan. Kadan's figure, in turn, was based upon a formula, which he claimed was an accepted industry-wide method of appraising commercial laundries and involved taking two thirds of annual gross receipts and multiplying it by a factor of 3, 4 or 5 depending upon various other factors. Not only did we question the sufficiency of Kadan's figure because predicated upon a formula with which he had little or no experience, but we also were disturbed by the fact that the valuation method was based entirely upon a factor of gross receipts without proof of

At this trial plaintiff retained an expert who testified that, at the time in question, it was custom and practice in the area to value a commercial laundry business based upon a factor of its weekly gross receipts. While plaintiff did not have complete documentation of its gross receipts, the expert arrived at an estimated figure by working backward from the documented gross volume of water used by the business in the years in question, namely, 6,902,090 gallons in 1972, 8,122,899 gallons in 1973 and 2,816,430 gallons in 1974. This estimate, which was based upon an average annual water usage for 1972 and 1973 of 6,015,360 gallons, a five-day work week, the pound capacity of plaintiff's six commercial wash wheels (one 1,000-pound machine, four 400-pound machines and one 225-pound machine), amount of water used by each per wash (1,223 gallons for the 1,000-pound machine, 576 gallons for each of the 400-pound machines and 329 gallons for the 225-pound machine) and a retail charge of 20 cents per pound to the customer, came to $16,950 in average weekly gross sales (i.e., $881,400 annually). The expert then multiplied this figure by a factor of 40, which, based upon his experience, he felt was appropriate and arrived at a fair market value of $678,000 at the time of loss. According to plaintiff's expert, the factors used in the laundry and linen business varied from 25 to 50 and the factor selected depends upon the volume, location, attractiveness of the business, amount of inventory, the projection of accounts that would not carry over upon sale and other variables.

Plaintiff still was unable, however, to provide concrete evidence of the profits it derived from its gross revenues inasmuch, as noted in our prior decision, the relevant documents were stored at the business location and destroyed in 1977 when defendant razed the building. Nonetheless, one of plaintiff's principals, Bertram Kadan, did provide indirect evidence of its profitability during the period in question, testifying that the business paid him and his two brothers a total of $39,000 in salaries per year, paid the home mortgages and carrying charges (fuel, electricity, taxes) on each of their personal residences, purchased new cars for each every two years, and paid for annual vacations, Kadan's higher education and pilot training classes.

---

profits and by the fact that it was unclear from the record whether the $491,750 in gross receipts figure proffered by Kadan represented his estimate of plaintiff's annual revenues or its aggregate revenues from 1972, when the problem began, until 1975 when the business closed its doors.

Upon denial of defendant's motion for a directed verdict, it presented its case. In sum and substance, while both defense experts acknowledged their familiarity with the gross receipts formula for valuing certain businesses, including commercial laundries, and one even indicated that if called upon to do so he would advise a prospective purchaser as to the value of commercial laundry accounts based solely upon a weekly gross sales figure, albeit using a multiplication factor of 5 to 25, both testified that additional information was necessary here in order to render an opinion as to this business's value. Accordingly, no valuation evidence was presented on defendant's behalf. The matter was then submitted to the jury, which returned a verdict of $75,000. Following Supreme Court's denial of both plaintiff's motion to set aside the verdict on weight of the evidence and inadequacy grounds and defendant's motion to set aside the verdict on the ground that plaintiff failed to satisfy its burden of proof on the issue of damages, both parties appealed.

Initially, we agree with Supreme Court that plaintiff's evidentiary showing, while admittedly weak, was nonetheless sufficient to establish a prima facie case and, accordingly, find that defendant's motion to set aside the verdict, inasmuch as it was based solely upon the quality of plaintiff's proof, was properly denied. A review of the papers reveals that this motion was based exclusively upon defendant's interpretation of our prior decision as standing for the proposition that a plaintiff can *never* meet his or her initial burden of coming forward with evidence establishing business loss by the submission of calculations based solely upon gross receipts. However, we do not read that case as so holding. While we alluded to the existence of a general rule rejecting the use of gross receipts as a means of establishing lost business value (164 AD2d 558, 565, *supra),* we did not affirmatively hold that such was insufficient as a matter of law in that decision; our holding was more circumscribed, standing only for the proposition that the proof of damages submitted therewith suffered from foundational defects and that the verdict was excessive.

Nor are we inclined to accept defendant's arguments now. Even assuming that the general rule applies in situations such as this where the subject inquiry is the fair market value of the business at the time of loss as opposed to a fraction of lost business profits *(compare, McRoberts Protective Agency v Lansdell Protective Agency,* 61 AD2d 652), defendant's formulation, which essentially amounts to the transformation of what is a general rule into a wholesale prohibition against gross re-

ceipts valuation, is to be rejected as overly formalistic and rigid. Moreover, such an absolute rule would ill serve the ends of justice, particularly in situations such as this where gross receipts valuation is shown by competent evidence to be standard custom and practice, there is some evidence of the amount of gross receipts and some evidence of the business's overall profitability.

Additionally, we are satisfied that the $75,000 jury verdict is adequate and consistent with the weight of the evidence. Obviously, the jury accorded little weight to the figures and formula advanced by plaintiff's expert. In view of the inherent weaknesses attendant to the valuation methodology employed by plaintiff's expert, notably the fact that certain of the component figures used to value the accounts were merely estimates due to the unavailability of any books and records, the complete absence of any proof of expenses and the expert's failure to make any adjustment for the building, equipment and vehicles that remained with plaintiff after the plant closed, it cannot be said that the jury's actions in this regard were without basis. Also significant to this inquiry is the testimony from defendant's expert, who indicated that the cost of labor, overhead, other expenses and profit were essential elements in evaluating any business and used a much lower range of factors (5 to 25) to compute the value of the accounts. If the lowest of defendant's factors is used, i.e., five, and is applied to weekly gross receipts of slightly less than that estimated from plaintiff's water usage, i.e., $15,000, it is clear that the $75,000 verdict is a conclusion within a valid line of reasoning and permissible inferences which reasonable jurors could reach upon the evidence submitted at trial *(see, e.g., Cohen v Hallmark Cards,* 45 NY2d 493, 499).

Weiss, P. J., Yesawich Jr., Crew III and Harvey, JJ., concur. Ordered that the judgment and order are affirmed, without costs.